**BUD WOLF CHEVROLET, INC.,**
**Appellant (Defendant Below),**

v.

**George and Patsy ROBERTSON,**
**Appellees (Plaintiffs Below).**

**No. 2–1084–A–322.**

Court of Appeals of Indiana,
Second District.

Aug. 4, 1986.

Gregory L. Noland, Emswiller & Noland, Indianapolis, for appellant.

John A. Young, John D. Cochran, Jr., Young, Cochran & Reese, Indianapolis, for appellees.

SULLIVAN, Judge.

Defendant-appellant Bud Wolf Chevrolet, Inc. (Bud Wolf) appeals from a jury verdict awarding plaintiffs-appellees George and Patsy Robertson (Robertsons) $3,500.00 compensatory and $75,000.00 punitive damages arising from the sale of a Chevrolet truck by Bud Wolf to Robertsons in 1978.

We affirm in part and reverse in part.

Bud Wolf presents three issues for our review, which we have restated as follows:

(1) Whether the trial court erred in granting the Robertsons motion *in limine* which requested refusal of testimony regarding George Robertson's six-month suspension from his employment in the Marion County Sheriff's Department.

(2) Whether the verdict is supported by sufficient evidence.

(3) Whether the award of $75,000 in punitive damages is excessive and contrary to law.

The evidence most favorable to the verdict discloses that on January 31, 1978, Robertsons purchased a 1978 Chevrolet truck from Bud Wolf for $10,548.75. Before they purchased the truck, Robertsons were told that the truck was a "new" truck which had 850 miles on it because a salesman had driven it back and forth to work from his home in Cicero, Indiana, during the month of January, 1978. The Robertsons were not told that prior to the sale, the truck had sustained some damage while parked on Bud Wolf's lot and subsequently had been repaired in Bud Wolf's body shop.

The Robertsons returned the truck to Bud Wolf for repairs on several occasions during the following eight months. Repairs to the truck under warranty included repainting of the right and left front fenders, replacement of a chrome piece in a headlight and moldings, alignment of the truck bed and investigation of causes of brake and tire noise.

Approximately two years later, when the truck developed a severe rusting problem on the right side, the Robertsons took it to Jim's Auto Repair, where an employee told them that it had previously sustained extensive and substantial damage and that the hood and windshield had been replaced. Robertsons filed suit after Bud Wolf refused any adjustment, based upon the ground that the truck's warranty had expired.

## I.

■ Bud Wolf's first argument is that the trial court erred in granting Robertsons' motion *in limine* prohibiting appellant from presenting evidence regarding George Robertson's six-month suspension from his employment with the Marion County Sheriff's Department.

Robertsons argue that Bud Wolf has waived this issue for failure to make an offer to prove during the course of trial. We agree.

As stated in *Hare v. State* (1984) Ind., 467 N.E.2d 7, 13:

"A motion *in limine* ... is used ... as a protective order against prejudicial questions and statements which might arise during trial. The trial court has inherent discretionary power to grant such a motion. The granting of a motion *in limine* prior to trial does not consist of a final ruling upon the ultimate admissibility of evidence. It is meant to protect against potential prejudicial matter coming before the jury until the trial court has an opportunity to rule upon its admissibility in the context of the trial itself." (Citations omitted.)

Furthermore, as noted in *Rohrkaste v. City of Terre Haute* (1984) 3d Dist. Ind. App., 470 N.E.2d 738, 741:

"As a preliminary ruling, the grant of a motion *in limine* is not itself reviewable on appeal. Likewise, error cannot be predicated on an objection to the grant of the motion. To preserve error, a party, out of the hearing of the jury, must propose to ask a certain question at trial and have the court prohibit it. Failure to offer the excluded material constitutes waiver of the issue."

In the case before us, Bud Wolf merely objected to the grant of the motion *in limine* prior to trial and failed to make an offer to prove during the course of the trial. Consequently, this issue is waived.[1]

## II.

Bud Wolf next argues that the verdict awarding damages to Robertsons is not supported by sufficient evidence and is therefore contrary to law under any of the three theories proposed in their complaint —fraud, breach of warranty and breach of

1. The situation before us is also unlike that considered in *Zion v. State* (1977) 266 Ind. 563, 365 N.E.2d 766, wherein our Supreme Court created an exception to the contemporaneous objection rule. In *Zion v. State, supra,* the court held that as the issue was fully litigated on the motion, the failure to object at trial to the same evidence was not a waiver and that the pre-trial motion satisfied the purpose of the contemporaneous objection rule.

contract. Central to this argument are Bud Wolf's contentions that the truck sold to Robertsons was a "new" truck because it had never been titled to anyone else and that it had sustained only minor damage in the dealership lot, which was subsequently repaired by Bud Wolf at minimal cost.

Robertsons argue that the truck was not "new" and that there was sufficient evidence to support the jury verdict based upon one or more of the theories advanced in the lawsuit.

The jury returned a general verdict for the Robertsons, fixing compensatory damages at $3,500.00 and punitive damages at $75,000.00.

In reviewing an allegation that a jury verdict is contrary to law, this court will neither reweigh the evidence nor judge the credibility of witnesses, but will examine the evidence most favorable to the appellee and all reasonable inferences to be drawn therefrom. *Johnston v. Brown* (1984) 3d Dist. Ind.App., 468 N.E.2d 597, 601.

It is undisputed that the truck sold to Robertsons was represented as a "new" truck which had been driven 850 miles by a salesman. Bud Wolf's salesman told Robertsons that the truck was "new," and the sales contract and other sale documentation described the truck as "new." It is also undisputed that the Robertsons were not told that the truck had sustained damage while parked on Bud Wolf's lot. There was conflicting evidence, however, as to the extent of the damage and repairs to the truck and the dates on which these occurred. Bud Wolf's employees testified that the truck had been struck on the right side near the door by another vehicle engaged in clearing snow from the lot and was subsequently repaired in Bud Wolf's shop at a total cost of $139.89. Bud Wolf considered such damage to be minor rather than substantial and thus adhered to its policy of not disclosing minor and subsequently repaired damages to a new vehicle unless the buyer inquired.

By contrast, both of Robertsons' experts considered the damage to the truck to be extensive and substantial, and both testified that the truck's hood and windshield had been replaced. The first expert found under the truck's right side a great quantity of plastic filler (Bondo) which, in his opinion, had been used to repair accident damage. The second expert, who inspected the truck after Robertsons had owned it more than six years, observed bent cross rails on the right side of the truck bed indicating that the truck had received a substantial impact on the right side. He opined that a quantity of "shims" had been placed under the cab mount in order to realign it. However, he could not state with certainty when the damages or repairs had occurred.

Robertsons testified that the truck was not wrecked while it was in their possession and Bud Wolf's witnesses testified that the truck was undamaged when it took possession. Robertsons testified further that if they had known at the time they purchased the truck that it had been wrecked, they would not have considered it to be a "new" truck and would not have purchased it.

Thus, the fundamental question which confronted the jury was whether it could properly conclude from the direct and circumstantial evidence presented that the truck was not "new" when the Robertsons purchased it and that the Robertsons incurred damages because they purchased it under the belief it was a "new" truck and paid the price of a "new" truck.

Robertsons correctly point out that there are no Indiana cases which define a "new vehicle" in the factual context present here. However, in *Wiseman v. Wolfe's Terre Haute Auto Auction, Inc.* (1984) 4th Dist. Ind.App., 459 N.E.2d 736, the court upheld the trial court's finding that a seller's assertion that a truck was "road ready" was an express affirmation of fact essential to the consummation of the sale and hence an express warranty. The *Wiseman* court analogized to *Kemp v. Mays* (1920) 73 Ind.App. 214, 127 N.E. 156, wherein the court held that a seller's statement that hogs being sold were "all right" provided some evidence to support the

jury's verdict that an express warranty was created.

Of the cases from other jurisdictions cited by Robertsons, the better reasoned of them have concluded that whether a vehicle is "new" or not is a question of fact to be decided by the trier of facts under the particular circumstances of each case. *See e.g. Maxcy v. Frontier Ford, Inc.* (1975) 29 Ill.App.3d 867, 331 N.E.2d 858. (Court rejected dealer's argument that car which had been previously sold and returned without a transfer of title must be considered to be "new," although it had 630 miles on it.) *See also Bell v. Louisville Motors Inc.* (1978) Ky.App., 573 S.W.2d 351, 353.

In *Krause v. Eugene Dodge, Inc.* (1973) 265 Or. 486, 509 P.2d 1199, factually similar to the instant case, a customer bought a "new" car from a dealer who had previously sold and recovered the car before title was transferred. The dealer denied any misrepresentation and argued that the car was "new" because it had not been previously titled. The dealer's policy was not to volunteer such information about a "new" car to the customer unless requested. The Oregon Supreme Court stated:

"... a member of the public who purchases a car which is represented to him as a 'new' car is entitled to understand the words 'new car' by giving those words their ordinary meaning.... The question of whether in such a case the words 'new car' were understood and intended by the purchaser to be given their 'trade meaning' among automobile dealers rather than the ordinary meaning of those words was a jury question."

A number of the out-of-state authorities which address this issue indicate that the primary factor in determining whether a vehicle should be considered "new" is the extent of the damage sustained by the vehicle before it is purchased. For example, in *Boulevard Chrysler-Plymouth v. Richardson* (1979) Ala., 374 So.2d 857, the Alabama Supreme Court affirmed a jury verdict for actual and punitive damages in a purchaser's action for fraud against a dealer who sold him a "new car," which, although not previously sold, had been involved in a front-end collision prior to sale and subsequently repaired and repainted. The court rejected the appellant's contention that the car was "new" because there had been no previous retail purchase and because the car had not been involved in a "substantial" collision with another vehicle, as evidenced by the minimal amount of repairs necessary to correct the damage. In rejecting the appellant's proposed definition of "new car," the court stated:

"Admittedly, extreme facts can be posed at either end of the issue, wherein, in one case, the car is undisputedly a new car (e.g., minor adjustment or repair which does not alter the car's condition from that normally and reasonably expected by a 'new' car purchaser); while, at the other extreme, the car is obviously not 'new' (e.g., a previous owner or major alterations and repairs resulting from the wreck of the vehicle).

We are not saying that in certain extreme circumstances the courts should not apply an objective legal test as determinative of the 'new car' issue, though we think the occasion for such application would be exceedingly rare. Ordinarily, the issue will be a factual one. Such is the case here. From the evidence the jury was justified in concluding, 'in accordance with reasonable expectations' standards, that this car was not new." *Id.* at 859.

■ With respect to the compensatory damages awarded, Mr. Robertson testified that because of various defects, the truck was worth no more than $4,000 when he purchased it. As the owner of the truck, Robertson was competent to testify as to its value. *Coyle Chevrolet Co. v. Carrier* (1979) 4th Dist. Ind.App., 397 N.E.2d 1283. This evidence is sufficient to support the jury's compensatory award. *Don Medow Motors, Inc. v. Grauman* (1983) 3d Dist. Ind.App., 446 N.E.2d 651, 654.

■ Although we believe that the evidence was susceptible to reasonably differing interpretations, the jury could have in-

ferred that the truck sold by Bud Wolf to Robertsons was not "new," as the term is commonly understood by the general public and that because Robertsons were told the truck was "new" and paid for a "new" truck but were not sold a "new" truck, they suffered damages. Accordingly, the jury's award of compensatory damages is affirmed.

### III.

Finally, Bud Wolf argues that there is insufficient evidence to support the verdict for punitive damages and that the punitive damages awarded are excessive. Robertsons assert that Bud Wolf has waived the sufficiency of the evidence challenge by failing to object to the instruction on punitive damages and by failing to request that the issue be withdrawn from the jury. Robertsons cite this court's decision in *Tutwiler v. Snodgrass* (1981) 2d Dist. Ind. App., 428 N.E.2d 1291, to support their position.

In *Tutwiler v. Snodgrass*, the effect of Trial Rule 50 of the Indiana Rules of Trial Procedure with respect to the question of waiver was neither argued by the parties nor noted by this court. Therefore, that case is not dispositive.[2]

Trial Rule 50(A), insofar as pertinent, reads as follows:

"Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon

notwithstanding a verdict. A party may move for such judgment on the evidence:

\* \* \* \* \* \*

(4) in a motion to correct errors;"

Because T.R. 50(A)(4) clearly permits the issue to be raised for the first time in the motion to correct errors, a challenge to the sufficiency of the evidence supporting a verdict cannot be waived by a failure to object to a jury instruction. Bud Wolf properly raised the sufficiency of the evidence issue in its motion to correct errors and the issue is properly before this court.[3]

As stated in *Art Hill Ford, Inc. v. Callender* (1981) Ind., 423 N.E.2d 601, 602:

"Punitive damages may be awarded in addition to compensatory damages whenever the elements of fraud, malice, gross negligence or oppression mingle in the controversy, and it can be shown that the public interest will be served by the deterrent effect of punitive damages."

In this case, the Robertsons presented evidence from which the jury could conclude that Bud Wolf's actions constituted fraud. However, punitive damages may not be allowed upon evidence that is merely consistent with a hypothesis of fraud. *Travelers Indemnity Co. v. Armstrong* (1982) Ind., 442 N.E.2d 349, 362.

While proof by a preponderance of the evidence was all that was required for the Robertsons to prevail on their claim for compensatory damages, proof by clear and convincing evidence was required before punitive damages could be awarded. *Id.* at 362–63. Because the concept of punitive damages is penal in nature, this clear and convincing standard is only slightly less stringent than the "reasonable doubt" stan-

---

**2.** If T.R. 50 had been discussed in *Tutwiler* and the plaintiff's sufficiency challenge been allowed, the result of the case would have been the same. While the appellant in *Tutwiler* was held to have waived its challenge to the sufficiency of the evidence, the court addressed the sufficiency question and found that there was sufficient evidence to support the award. *Tutwiler v. Snodgrass, supra,* 428 N.E.2d at 1298.

**3.** The fact that Bud Wolf is challenging the sufficiency of the evidence is crucial. If Bud

Wolf had attempted to challenge the award on some other grounds, the failure to object to the instruction on punitive damages or to request that the issue be removed from the jury might have constituted a waiver. *See City of Gary v. Archer* (1973) 3d Dist. 157 Ind.App. 477, 300 N.E.2d 687. (By failing to object to jury instructions on punitive damages, defendant city waived issue of whether punitive damages assessed against it were contrary to public policy.)

dard employed in criminal trials. *Orkin Exterminating Co., Inc. v. Traina* (1986) Ind., 486 N.E.2d 1019, 1022. Thus, plaintiffs seeking an award of punitive damages must meet a standard of proof more demanding than that required for compensatory damages. As a matter of law, Robertsons have failed to meet this standard, and the award of punitive damages must be reversed.

■ In order to support an award of punitive damages, there must be evidence that is inconsistent with the hypothesis that the defendant's wrongful act "was the result of a mistake of law or fact, honest error of judgment, overzealousness, mere negligence or other such non-iniquitous human failing." *Travelers Indemnity Co. v. Armstrong, supra,* 442 N.E.2d at 362. In short, there must be some evidence of malice. *Miller Pipeline Corp. v. Broeker* (1984) 2d Dist. Ind.App., 460 N.E.2d 177, 184–85, *reh. denied* 464 N.E.2d 12. The search for evidence of malice must be undertaken with the knowledge that "the defendant, in a claim for punitive damages, is cloaked with the presumption that his actions, though tortious, were nevertheless noniniquitous human failings, i.e. that he is *not guilty of the quasi-crime alleged."* *Orkin Exterminating Co., Inc. v. Traina, supra,* 486 N.E.2d at 1023. (Emphasis in original). While the jury in this case was instructed to apply the clear and convincing standard of determining whether to award punitive damages, it is apparent that the instructions failed to give appropriate perspective to the stringency of the standard.[4] If the clear and convincing standard and the required presumption of the defendant's innocence were applied, no reasonable person could conclude from the evidence that Bud Wolf's conduct was so malicious as to warrant an award of punitive damages.

■ The evidence, though permitting a conclusion of tortious conduct sufficient to support compensatory damages, does not permit a conclusion of malice sufficient to support an award of punitive damages. The evidence is consistent with a hypothesis that the conduct was a result of an error in judgment rather than malice. Bud Wolf might have concluded that replacement of a hood, windshield and repair of the damage did not destroy the "new" character of the vehicle. Whether this conclusion was erroneous, negligent, or even wantonly oblivious of the effect upon the purchaser, is not determinative. *Orkin Exterminating Co., Inc. v. Traina, supra,* 486 N.E.2d 1019. The determinative issue is whether quasi-criminal malice has been proved.

"The issues produced by the punitive damages concept are inherently issues of degree...." *Travelers Indemnity Company v. Armstrong, supra,* 442 N.E.2d at 360. While we do not condone Bud Wolf's conduct, we must say, as a matter of law, that the quasi-criminal element of malice was not demonstrated by evidence sufficient to meet the clear and convincing standard.

Because we find the evidence insufficient to support an award of punitive damages, we do not address the argument that the punitive damages were excessive.

Insofar as the judgment includes an award for punitive damages, it is reversed. The judgment is affirmed in all other respects. The cause is remanded with in-

---

4. Defendant's Instruction Number 5 stated:
  "If you find that George and Patsy Robertson are entitled to recover, then in addition to the actual damages to which you find them entitled, you may award an additional amount as punitive damages if you find by clear and convincing evidence that Bud Wolf Chevrolet, Inc., acted with malice, fraud, gross negligence or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negli-
gence, or other human failing in the sum as you believe will serve to punish the Defendant and to deter it and others from like conduct in the future." Record at 113.
  Plaintiff's Instruction Number 10 stated:
  "Clear and convincing may be defined as an intermediate standard of proof greater than a preponderance of the evidence and less than proof beyond a reasonable doubt and requires the existence of a fact be highly probable." Record at 106.

structions to modify the judgment accordingly.

The costs are assessed against appellant.

BUCHANAN, C.J., and SHIELDS, J., concur.