MARTIN CHEVROLET SALES,
INC., Appellant,

v.

J. Fred DOVER, Appellee.

No. 4–485A91.

Court of Appeals of Indiana,
Fourth District.

Dec. 30, 1986.

Timothy W. Woods and Mark J. Philli-poff, South Bend, for appellant.

John C. Hamilton, Parker & Jaicomo, South Bend, for appellee.

MILLER, Judge.

J. Fred Dover, purchaser of a 1980 Monte Carlo new demonstrator automobile, initially sued Martin Chevrolet Sales, Inc., the dealership-seller, and General Motors Corporation, the manufacturer, for fraud and breach of warranties after discovering the Monte Carlo had been damaged and repaired three times before its purchase. GMC settled before the trial for $200.00. The jury returned a general verdict for Dover and against Martin, awarding $2500.00 in compensatory damages and $500.00 in punitive damages. The trial court entered judgment and later granted Dover's request for attorney fees of

$9,273.50 pursuant to IND.CODE 26–1–2–721 (attorney fees for fraud).

On appeal, Martin Chevrolet challenges the sufficiency of the evidence; the jury instructions and amount of punitive damages; Dover's witness' testimony on a single similar occurrence; the award of attorney fees; and, the trial court's refusal to reduce Dover's judgment by the amount received in settlement from former defendant GMC.

We affirm the judgment except for the award of punitive damages.

FACTS

Martin Chevrolet Sales, Inc., a car dealership with offices in Bremen, Indiana, received a 1980 Monte Carlo on October 10, 1979. A stock index card and new car packet were prepared,[1] and the Monte Carlo was assigned stock number 5714. The list price was $7,890.69. On October 16, 1979, the Monte Carlo became a demonstrator and was given to a Martin salesman, Johansen,[2] who drove and showed the car to customers.

The Monte Carlo sustained damage and was repaired three times between February and August 1980. First, Johansen had an accident and on February 11, 1980 Cecil Wilson, one of Martin's body shop employees, prepared an estimate for work on the car along the driver's side including the left quarter panel. The work was completed on February 15, 1980 and an invoice was prepared and sent to Martin's Used Car Manager, who charged Johansen $208.16 for the cost of repairs.

On February 18, 1980, Cecil Wilson prepared a second invoice for repairs of $42.90 to the Monte Carlo which was submitted to and paid by GMC under warranty.

1. The stock index card recorded various information about the vehicle, including its stock number, type, features, and list price. A new car packet is where all documents on a car were placed, including title information and the stock index card. The stock number was used to identify repair invoices and other documents

concerning a vehicle. Car packets were filed by stock number.

2. The record and the briefs refer to this Martin's salesman as "Joe Hanson" and "Johansen". Martin's records indicate the correct name is "Johansen".

On July 24, 1980, Cecil Wilson prepared a third invoice for repairs of $43.40 for the front fender and "rocker" of the Monte Carlo. This invoice was also submitted to and paid by GMC under warranty. Total repairs from all three invoices were $294.46 according to Martin's records.

Martin's standard operating procedure was to place the estimate and second copy of the invoice in the car packet. The original invoice was placed in a chronological cross-file. The third copy was retained in the warranty file if submitted to GMC, or thrown away. The final hard copy was placed in the employee's file for payroll purposes.

Martin had a sale on October 1, 1980 and Plaintiff Dover, a 21 year old who worked as a high speed cutter at a local box manufacturing plant, stopped in to look at the cars. A Martin salesman, Rick Anderson, showed Dover several cars including a new 1981 Monte Carlo, but Dover could not afford the 1981 model. Anderson then suggested he had a new demonstrator for sale, the 1980 Monte Carlo. Anderson described the 1980 Monte Carlo as a "show car" used by Martin employees to show particular car models to prospective buyers. The sticker price on the window was $7,890.69, several thousand dollars less than the 1981 model. Anderson told Dover the car had been driven 6,800 miles but that the mileage "didn't mean anything" and a new car warranty of 12,000 miles would be added to the 6,800 miles already on the 1980 Monte Carlo. Anderson also told Dover that the trade-in available on Dover's 1978 Chevette was no different on the 1980 than the 1981 model.

Fred Dover signed a purchase order for the 1980 Monte Carlo that evening. The form included boxes indicating the car as "new", "used", or "demo". Only the box marked "new" was checked on the copy of the purchase order Dover was given on October 1, 1980. Dover took the car home that night to show it to his wife. He observed no damage to the car. It looked to him like a new car.

The next day, October 1, 1980, he returned to Martin and agreed to buy the car. After credit approval, the sale was concluded in a series of papers including the purchase order, now with checks in both the "new" and "demo" boxes, a new vehicle pre-delivery checklist; and the security agreement. While preparing these papers, Anderson told Dover, "It is a new car". While Anderson had negotiated the sale, Joe Martin, President of Martin Chevrolet Sales, Inc., approved the sale and signed the security agreement which described the car as "1980 New Chevrolet Monte Carlo Landau".[3]

At no time during the process by which Dover purchased the car did anyone tell him that the car had been repaired three times or that one of the repairs resulted from an accident involving one of the dealership's salespersons. Anderson stated at trial that, as of the sale in October 1980, he did not know Johansen had involved the car in an accident. Joe Martin testified that had he known of the damage, he would *not* have told Dover and, further, that he often sells demonstrator vehicles that have been damaged as new with no adjustment to the price. Anderson testified he did not inform buyers of damage and repaired new cars that the cars had been in wrecks because he had been "told by his supervisors not to give the consumer that kind of information".

Two months later, Dover noticed a scratch above the driver's door handle. He took the car to Max Virgil's body shop for repair. Virgil discovered the car had been wrecked from the driver's door to the left rear tail light. The top half of the door had been dented and fiberglass filler used

**3.** Dover agreed to pay $8,057, which reflects the original list and sticker price of $7,890.69 plus $146.00 for taxes and $21.00 for registration. Martin paid GMC $6,517.57. The full contract price was $9,450.61 including interest on time payments. Dover traded in his 1978 Chevette as part of the deal, at $3,000. According to the N.A.D.A. Used Car Guide, a 2 door 1978 Chevette had a retail value, excluding features, of $3,500.00 in October 1980. The purchase order described Dover's trade-in as "loaded".

on three-quarters of the door. The left quarter panel had a dozen holes drilled into it in order to insert pull rods which were used as part of the process of pulling the dents out. The left quarter panel was extensively damaged. The door paint varied where the repairs had been done, blending the car's original light beige to a darker brown. A sculptured contour on the left quarter panel stopped after one inch, whereas the contour on the right quarter panel extended nine inches. Virgil concluded the contour on the left side was missing because the entire area had been smashed.

Virgil estimated the retail cost to properly repair the damage he observed would be between $600 and $700. Martin's invoices showed an in-house total repair cost of $294.46. Apparently the in-house repair cost of the specific damage at issue here was $208.16.

Virgil explained the damage to Dover, who immediately contacted Anderson. Anderson denied knowing anything about a wreck. Dover went to Martin Chevrolet the next morning and met with Anderson and Joe Martin. Martin knew of the two warranty invoices totalling $86.30 in repairs but did not tell Dover and instead promised to check the dealership records after he returned from a two week vacation. Dover returned five or six times through January and February 1981. Martin told Dover he was unable to find any record of an accident to the 1980 Monte Carlo while in the dealership's possession.

Dover hired an attorney. Joe Martin continued to deny knowledge of any accident but eventually admitted repairs of $86.30. The first admission of pre-sale damage was on February 18, 1982. Although Joe Martin asserted he had unsuccessfully searched all files except the hard copy file for repair invoices on the Monte Carlo, the original invoice was produced at trial. No explanation was presented as to how or when or by whom the missing in-

voice or estimate that preceded it were discovered.

Dover sued Martin Chevrolet and General Motors Corporation on two theories, fraud and breach of warranties. GMC settled for $200.00 before trial. After a two day trial, the jury returned a verdict for Dover and against Martin for $2500.00 in compensatory damages and $500.00 in punitive damages. The trial court entered judgment on the jury's verdict and later granted Dover's request for attorney fees of $9,273.50 pursuant to I.C. 26-1-2-721.

### Issues

Martin Chevrolet presents the following issues for review on appeal:

I. Whether the jury verdict was supported by sufficient evidence upon all necessary elements of Dover's claim of fraud.[4]

II. Whether the trial court erred in instructing the jury on punitive damages.

III. Whether the trial court erred in awarding attorneys fees pursuant to I.C. 26–11–2–721 or whether the amount of fees was supported by the evidence.

IV. Whether the trial court erred in denying Martin Chevrolet's Motion for Mistrial after the court allowed the testimony of a single allegedly similar occurrence by Dover's witness.

V. Whether the trial court erred in refusing to modify Dover's judgment by the $200.00 he received in settlement from former defendant GMC.

### DECISION

#### I. Sufficiency of the Evidence

In reviewing the sufficiency of the evidence in a civil case, we will decide whether there is substantial evidence of probative value supporting the trial court's judgment. We neither weigh the evidence nor judge the credibility of witnesses but will consider only the evidence most favorable

4. The jury returned a general verdict. Because we find the evidence sufficient to support the fraud claim, we need not address Martin Chevrolet's challenges to the sufficiency of the evi-

dence on breach of express warranty and breach of the implied warranty of merchantability and disclaimer of warranties.

**1126**

to the judgment along with all reasonable inferences to be drawn therefrom. *Martin v. Roberts* (1984), Ind., 464 N.E.2d 896; *Master Abrasives Corp. v. Williams* (1984), Ind.App., 469 N.E.2d 1196.

Martin Chevrolet argues that Dover failed to present adequate evidence of two of the elements of fraud, misrepresentation and justifiable reliance. The dealer maintains that a "new car" is one which has not been sold or titled to its first purchaser and which receives the benefits of a "new car" including full factory mileage warranty and favorable loan rates. Martin asserts Dover knew the car had 6,800 miles on it and had been used by the dealer as a demonstrator so this is not a case where a used product was sold as new. Martin claims it made no representations because "Dover knew the car was not new in the sense of 'brand new', he failed to prove justifiable reliance on the alleged misrepresentation of the car as being 'new'."

Dover argues the car was not "new" because it had been substantially damaged and repaired; that Martin Chevrolet repeatedly represented the car as new; and that Dover relied upon these misrepresentations and would not have purchased the car if he had known it had been damaged and repaired three times. Dover contends there was sufficient evidence to support a jury verdict on all elements of fraud.

The jury returned a general verdict for Dover, fixing compensatory damages at $2,500.00 and punitive damages at $500.00.

■ Generally, fraud consists of a misrepresentation of a material fact, scienter, deception, reliance, and injury. *Whiteco Properties, Inc. v. Thielbar* (1984), Ind. App., 467 N.E.2d 433; *Jenkins v. Nebo Properties, Inc.* (1982), Ind.App., 439 N.E.2d 686. Stated otherwise, the essential elements of actual fraud "are a material misrepresentation of past or existing facts, which representations are false, made with knowledge or reckless ignorance of this falsity, which cause a reliance upon these representations, to the detriment of the person so relying." *Whiteco, supra;* *Blaising v. Mills* (1978), 176 Ind.App. 141, 374 N.E.2d 1166.

. ■ The evidence is undisputed that the car sold to Dover was represented as a "new" demonstrator which had been driven 6,800 miles in the one year it was used as a show car by the dealer. Martin Chevrolet's salesman told Dover the car was "new", and the sales contract and other sale documents described the car as "new". Dover paid the full list price, was given full factory warranties, and favorable new car loan rates. It is also undisputed that Dover was not told the car had sustained damage three times while on Martin Chevrolet's lot, including an accident involving one of the dealer's salespersons.

However, conflicting evidence was presented at trial as to the extent of damage and repairs to the car. Martin Chevrolet records indicate the car was damaged on three separate occasions and repaired by the dealer's own body shop at a total cost of $294.46. Martin Chevrolet considered this damage to be minor and adhered to its established policy of not disclosing minor and subsequently repaired damages to a new vehicle to a prospective buyer. In contrast, Dover's expert, Max Virgil, considered the damage to the Monte Carlo to be substantial. Virgil testified the car had been wrecked from the driver's door to the left rear tail light and fiberglass filler had been used on three quarters of the driver's door. Virgil found a dozen holes drilled into the left quarter panel to insert pull rods to remove dents. The door had been repainted and a sculptured contour on the left quarter panel extended one inch instead of nine inches as on the right side. Virgil concluded the left side of the car had been smashed and estimated the retail cost to properly repair the damage he observed would be between $600.00 and $700.00.

The only Indiana case which defines a "new vehicle" in the factual context presented here is *Bud Wolf Chevrolet, Inc. v. Robertson* (1986), Ind.App., 496 N.E.2d 771. The Robertsons brought fraud and breach of warranties claims against Bud Wolf Chevrolet for compensatory and puni-

tive damages arising from the sale of a "new" chevrolet truck which was represented as "new" by the salesperson but had sustained $139.89 in damage when struck by another vehicle while parked on the dealer's lot. The accident was not disclosed to the Robertsons at purchase and was discovered several years later. The jury returned a general verdict in favor of the Robertsons, awarding $3,500.00 in compensatory damages and $75,000.00 in punitive damages. Our court affirmed the general verdict and the award of compensatory damages, but struck down the punitive damages as a matter of law because the evidence the dealer represented a damaged and repaired truck as "new" did not support the conclusion of malice necessary to an award of punitive damages. The *Bud Wolf* court found the question of "whether a vehicle is 'new' or not is a question of fact to be decided by the trier of facts under the particular circumstances of each case." *Id.* at 775. The court implicitly rejected the trade meaning among automobile dealers of "new vehicle" because it permitted the jury to apply the ordinary meaning of the term "new vehicle" as commonly understood by the general public. *Id.* at 775–776. The court reasoned:

"Although we believe that the evidence was susceptible to reasonably differing interpretations, the jury could have inferred that the truck sold by Bud Wolf to Robertsons was not *'new,' as the term is commonly understood by the general public* and that because Robertsons were told the truck was 'new' and paid for a 'new' truck but were not sold a 'new' truck, they suffered damages. Accordingly, the jury's award of compensatory damages is affirmed." (emphasis added).

*Id.* at 776.

Here, the issue of whether the car was "new" was a factual question. The jury was justified in concluding, from the evidence Dover presented, that the car was not "new" when Dover purchased it and the dealer had made a false material misrepresentation of past or existing fact. Dover also testified that if he had known at the time he purchased the car that it had been wrecked once and repaired three times, he would not have considered it "new" and would not have purchased it. This is sufficient evidence to justify the jury's conclusion that Dover relied upon the dealer's representation that the car was new.

## II. *Punitive Damages*

Martin Chevrolet urges that because Dover failed to establish a *prima facie* case for punitive damages as required by *Travelers indemnity Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349, the trial court erred in giving a jury instruction on punitive damages.[5] Martin argues there is no evidence in the record that Martin's conduct was inconsistent with mere negligence.

■ Under *Travelers*, in order to be entitled to punitive damages, plaintiff must prove by clear and convincing evidence that the defendant's actions were accompanied by malice, fraud, gross negligence or oppressive conduct and that defendant's acts were inconsistent with conduct that was the result of mere negligence, a mistake of law or fact, overzealousness or other noniniquitous human failings. Martin Chevrolet argues Dover tried to show Martin deliberately and knowingly refused to admit, after Dover discovered the damage, that the car had been wrecked and repaired before sale, but the evidence showed only that the repair order was misfiled and the dealer disclosed this to Dover at trial as soon as it was discovered. Martin Chevrolet claims misfiling a single sheet of paper

---

5. The trial court gave the following jury instruction:

In order for the plaintiff to recover punitive damages against the defendant, the plaintiff must prove by clear and convincing evidence that Martin Chevrolet Sales, Inc. breached its contract with plaintiff and that its actions were accompanied by malice, fraud, gross negligence or oppressive conduct and that the acts of Martin Chevrolet Sales, Inc. were inconsistent with conduct that was the result of mere negligence, a mistake of laws or fact, overzealousness or other non-malicious human failings.

was conduct consistent with the noniniquitous human failing of negligent filing.

■ Punitive damages may not be allowed upon evidence that is merely consistent with a hypothesis of fraud. *Travelers, supra.* There must be some evidence of malice. *Orkin Exterminating Co., Inc. v. Traina* (1986), Ind., 486 N.E.2d 1019; *Miller Pipeline Corp. v. Broeker* (1984), Ind. App., 460 N.E.2d 177. "The defendant, in a claim for punitive damages, is cloaked with the presumption that his actions, though tortious, were nevertheless noniniquitous human failings." *Orkin, supra.*

■ While the jury was instructed to apply the clear and convincing standard to determine whether to award punitive damages, it is apparent that the instructions failed to give the required presumption of defendant's innocence. *Bud Wolf Chevrolet, supra.* Here, if both the clear and convincing standard and the required presumption of defendant's innocence were applied, no reasonable person could conclude from the evidence that Martin Chevrolet's conduct was so malicious as to warrant an award of punitive damages. While we do not condone Martin Chevrolet's conduct, we must say, as a matter of law, that the quasi-criminal element of malice was not demonstrated by evidence sufficient to meet the clear and convincing standard.[6] The Court erred in giving an instruction on this issue.

The portion of the judgment awarding punitive damages is reversed.

### III. *Attorney Fees*

■ Martin Chevrolet has waived this issue for failure to present cogent argument and citation to authority. Martin Chevrolet points out in its brief that the trial court awarded Dover $9,273.50 in attorney fees pursuant to I.C. 26-1-2-721, which mandates award of attorney fees if the plaintiff recovers, under the U.C.C., in any amount on a fraud theory. Martin

Chevrolet's entire argument attacking the award of attorney fees is as follows:

"Plaintiff, in his memorandum attached to Plaintiff's Motion for an Award of Attorney's Fees as Part of the Judgment reasons that because the jury awarded punitive damages of Five Hundred and No/100 Dollars ($500.00), there was an 'implicit finding of fraud and misrepresentation' (R. 374–380 at 375).

Plaintiff's reasoning is defective in the following respects: One, plaintiff sued on two theories—breach of warranties and fraud. The jury's general verdict gives no indication as to which theory it based its decision. Two, as shown above, plaintiff did not prove his allegation of fraud. Third, it can be implied from the jury's verdict that no damages were awarded on plaintiff's theory of fraud as the court did not instruct the jury on the measure of damages for fraud." (Appellant's Brief, p. 32–33).

Our Rules of Appellate Practice, Rule 8.3(A)(7) provide in part:

"The argument shall contain the contentions of the appellant with respect to the issues presented, the reasons in support of the contentions along with citations to the authorities, statutes, and parts of the record relied upon, and a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review."

Martin has wholly failed to comply with this rule. A one-sentence conclusory assertion for each of the three reasons why the court erred is no cogent argument at all.

"Appellants have cited only the barest of authority and made no cogent argument, again in direct contradiction to A.R. 8.3(A)(7). Instead, they have offered only conclusory statements in support of their position. This is not sufficient. *See May v. Blinzinger* (1984), Ind.App., 460 N.E.2d 546, 551, *trans. denied.*" *Bank of N.Y. v. Bright* (1986), Ind.App., 494 N.E.2d 970, 978. *See also,* Bagni, Gidding, and Stroud, Indiana Appellate

---

6. Because we find the evidence insufficient to support an award of punitive damages, we need not address the argument that the punitive damages were excessive.

Practice § 62 and authorities cited therein.

Martin Chevrolet makes a two sentence argument in support of its claim that attorney fees were excessive. The entire argument in the brief is as follows:

> Assuming *arguendo* that plaintiff was entitled to an award of attorney fees, the fees awarded to plaintiff were clearly excessive in that they included a significant amount of time pursuing plaintiff's claim against General Motors. (Affidavit of John C. Hamilton Re Plaintiff's Request for Payment of His Fees, R. 381–387).
>
> Martin should not be assessed fees for the time spent on the General Motors aspect of the case; and, if this Court finds plaintiff to be entitled to attorney fees, it should remand the case back to the trial court to award fees based upon plaintiff's claim against Martin only.

Again, this is not cogent argument. *See* authorities cited above. We are not required to search the record to determine the nature and amount of attorney fees relating to General Motors. It could be de minimus. We note in this regard that the failure of Martin Chevrolet to provide plaintiff Dover, during discovery, with the information that the car had been damaged while in the dealer's possession and not while in General Motor's possession necessitated the pursuit of General Motors as a defendant. The failure to present cogent argument is a waiver of this alleged error.

### IV. *Single Allegedly Similar Occurrence*

■ Ray Matheny was permitted to testify, as plaintiff's witness over Martin's objection, that he bought a van from Martin in 1978 and discovered three months after purchase that the van had been damaged in the rear quarter panel and Martin had disconnected the speedometer. Martin objected to the question posed to Matheny,[7] stating it was irrelevant, immaterial, and prejudicial. After Matheny's answer, Martin moved for a mistrial. The trial court denied the motion and admonished the jury to disregard the reference to speedometer tampering. Martin argues the presale damage testimony was erroneously admitted because no similarity in essential circumstances and conditions was shown by Dover (lack of foundation), a reason not included in Martin's objection at trial. Martin maintains the speedometer tampering testimony was of wholly unrelated criminal activity and prejudicial, and the prejudice was not cured by the admonition of the jury, so a mistrial must result.

Martin's objection to the question posed to Matheny and his testimony—which did not include the later grounds it raises in its appellate brief—concerning both presale damage and tampering was general and, as such, preserved no error for review. *O'Connor v. State* (1980), 272 Ind. 460, 399 N.E.2d 364 ("irrelevant"); *English Coal Co. v. Durcholz* (1981), Ind.App., 422 N.E.2d 302 ("no bearing on the case"); *Beaty v. Donaldson* (1964), 136 Ind.App. 269, 200 N.E.2d 233 (general objection fails to preserve error for appellate review); *Bell v. State* (1977), 267 Ind. 1, 366 N.E.2d 1156 (waiver of objection not raised before trial court).

■ Our Supreme Court recently summarized the standard of review of the denial of a motion for mistrial in *Palmer v. State* (1985), Ind., 486 N.E.2d 477:

> "The decision to grant a motion for mistrial lies within the sound discretion of the trial court. *Van Orden v. State* (1984), Ind., 469 N.E.2d 1153. In order to establish that a denial of a mistrial

---

7. The record shows the following:
   *BY MR. HAMILTON:*
   Q. Mr. Matheny, did you discover anything about your van approximately three months after you had purchased it?
   A. Yes, sir.
   Q. What was that?
   MR. WOODS: Objection, Your Honor. Again, it is irrelevant, immaterial and prejudicial and has no bearing on any issue in this case.
   THE COURT: Objection overruled.
   *BY MR. HAMILTON:*
   Q. What did you discover, sir?
   A. It had been damaged in the rear quarter panel and the speedometer was disconnected. (R. 506–507).

motion constituted an abuse of discretion, the appellant must demonstrate that he was placed in a position of grave peril to which he should not have been subjected. *Holliness v. State* (1984), Ind., 467 N.E.2d 4. The declaration of a mistrial is an extreme action which is warranted only when no other recourse could remedy the perilous situation. *Bedwell v. State* (1985), Ind., 481 N.E.2d 1090. Generally, this Court will not find reversible error when the trial court admonishes the jury to disregard the statement made during the proceedings. *Reese v. State* (1983), Ind., 452 N.E.2d 936." *Id.* at 483.

Assuming *arguendo* that Dover's counsel's question to Matheny was improper, we do not deem this conduct to have placed Martin Chevrolet in a position of grave peril. The trial court was well within its discretion in refusing to grant a mistrial.

## V. *Set-Off*

Martin claims the trial court erred in refusing to reduce Dover's judgment by $200.00, the amount received in settlement from former defendant General Motors Corporation. Martin argues that Dover is entitled to only one recovery for a single wrong and Indiana case law requires a payment made in partial satisfaction of a claim to be credited against the remaining liability to prevent a double recovery.

Dover argues Martin has waived this issue because the trial record does not support Martin's contention and the dealer did not include it in the transcript of the hearing on the motion to correct errors. Dover cites *Ohio Casualty Insurance Co. v. Ramsey* (1982), Ind.App., 439 N.E.2d 1162 as support for this contention. Martin responds noting that the motion to correct errors was overruled before any argument by counsel was offered, so the transcript need not include the hearing.

■ In *Ohio Casualty, supra,* the insured sued her fire insurer for the face amount of the policy after her residence was totally destroyed by fire. The trial court entered judgment for the insured, and the insurer appealed arguing the measure of damages used by the trial court was incorrect. The Second District reversed and remanded for a new trial on the issue of damages. Ohio Casualty argued in both its motion to correct errors and its appellants' brief that the trial court erred in failing to reduce the judgment by $2,400.00, a sum allegedly paid to Ramsey by Ohio Casualty before trial. However, the record contained no evidence as to advance payment of damages. The Second District held Ohio Casualty had waived its claim of error by failing to establish a proper record in the trial court. *See also,* Ind. Rules of Procedure, Appellate Rule 7.2(B) and (C); *Dunn v. State* (1982), Ind., 439 N.E.2d 165 (Hunter, J., concurring in result). When error is alleged but is not disclosed by the record, it is not a proper subject for review by the Court of Appeals. *Associated Truck Lines, Inc. v. Public Service Commission of Indiana* (1986), Ind.App., 492 N.E.2d 704.

■ Martin fails to cite, in either its motion to correct errors, appellants' brief, or reply brief, to that portion of the record, if any, which shows GMC paid Dover $200.00 in partial settlement of this lawsuit. Martin bears the burden of demonstrating error, and the appellate court will not sift through the record attempting to locate trial court error so that it might state appellant's case for him. *Matter of Trust of Loeb* (1986), Ind.App., 492 N.E.2d 40; *Raymundo v. Hammond Clinic Association* (1983), Ind., 449 N.E.2d 276. Martin has therefore waived this issue on review.

The judgment of the trial court is reversed on punitive damages and affirmed in all other things.

CONOVER, P.J., and YOUNG, J., concur.