**Pamela DAVIDSON, Personal Representative of the Estate of Clarence Davidson, Plaintiff,**

v.

**JOHN DEERE & COMPANY, Defendant.**

No. S85–496.

United States District Court, N.D. Indiana, South Bend Division.

Sept. 12, 1986.

John D. Ulmer, Goshen, Ind., Robert H. Darling, Southfield, Mich., for plaintiff.

Robert F. Parker, Hammond, Ind., for defendant.

## MEMORANDUM and ORDER

MILLER, District Judge.

### I. Introduction; Jurisdiction

This matter is before the court on defendant John Deere & Company's (hereinafter "Deere") motion for summary judgment, filed on March 13, 1986 together with a supporting memorandum of law and several affidavits. On April 16, 1986, Deere filed a memorandum of supplemental authority. Plaintiff Pamela Davidson, as Personal Representative of the Estate of Clarence Davidson, filed a memorandum of law in opposition to Deere's motion for summary judgment on May 23, 1986.[1] Deere filed a memorandum of law in reply, together with an affidavit, on June 16, 1986. Ms. Davidson filed a memorandum of law in response to Deere's reply on June 23, 1986. The court heard oral arguments on Deere's motion for summary judgment on June 24, 1986. Deere filed a memorandum of supplemental authority on July 24, 1986. The court will now address Deere's motion for summary judgment.

Plaintiff Pamela Davidson, Personal Representative of the Estate of Clarence Davidson, filed this complaint in four counts: Count I is based upon a claimed violation of Indiana's products liability act, IND.CODE 33-1-1.5-1 *et seq.;* Count II is based upon implied warranty; Count III is based upon express warranty; and Count IV is based upon negligence, and is governed by Indiana's Comparative Fault Act, IND.CODE 34-4-33-1 *et seq.*

Ms. Davidson asserts that this court is vested with subject matter jurisdiction to hear her action pursuant to 28 U.S.C. section 1332, based upon diversity of citizenship of the parties and an amount in controversy in excess of $10,000.00. Her complaint, however, does not allege the state of Deere's incorporation. This appears to constitute only a technical pleading error in pleading, and Deere does not contest jurisdiction. The parties cannot create subject matter jurisdiction by consent, however, and the court accordingly directs the parties to submit proof of Deere's state of incorporation within fifteen (15) days of the entry of this order.

### II. Factual Background

The record now before the court on Deere's motion for summary judgment consists of plaintiff's answers to interrogatories, depositions of various construction workers and Deere employees, several affidavits, portions of a report by an investigator for Indiana's OSHA, and a copy of the operator's manual for Deere's JD–125 skid-loader.

This action arose from a tragic incident on March 5, 1985 during the construction of a building in South Bend, Indiana. The plaintiff's decedent, Clarence Davidson, was then employed as a general supervisor for Arco Construction Company. Mr. Davidson needed to level the ground in an excavation before constructing a subfloor; he intended to use Arco's Deere JD–125 skid-loader for that purpose. The skid-

---

1. Plaintiff's opposition memorandum was timely filed as the court had granted plaintiff an extension of time within which to file a response by order of March 21, 1986.

loader is a four-wheeled vehicle with a bucket on the front which is designed to be used for grading ground. Mr. Davidson rigged the loader with cables and lowered it into the excavation using a crane. In the process of lowering the skid-loader into the excavation, a metal plate protecting the loader's foot controls became bent.

At this point, details are sketchy as no one was working with Mr. Davidson on the project to witness the events that next occurred. There is evidence that the bucket of the skid-loader was in a "down" position when the loader was first set down in the excavation. Sometime later, a worker noticed Mr. Davidson descending into the excavation with a wrench. The bucket was then elevated to a height of five feet, a position which is not totally elevated. A while later, Mr. Davidson was seen retrieving a second wrench. Mr. Davidson was thereafter found dead, under the bucket of the skid-loader which had descended upon him, delivering a fatal blow; next to his body lay the bent metal plate. A worker turned on the skid-loader, the motor of which had not been running, so that Mr. Davidson's body could be retrieved.

The parties now surmise that Mr. Davidson was attempting to remove the bent plate when the hydraulic system engaged to the left foot pedal and released the bucket into free fall onto Mr. Davidson. The skid-loader was not running at the time the accident occurred. The skid-loader was equipped with safety locks which could be manually engaged when the bucket was fully elevated; however, the parties believe that the locks were not engaged when the accident occurred as the bucket was not believed to be fully elevated and the locks, as well as the entire hydraulic bucket mechanism, worked perfectly when tested after the accident. Deere had posted warnings on the front of the skid-loader and in the owner's manual (which Mr. Davidson carried in his truck) to warn against work-

ing beneath the bucket if the locks were not engaged. The owner's manual included no directions for rigging the loader to a crane.[2]

As noted above, Ms. Davidson's complaint asserts claims founded upon strict liability, implied warranty, express warranty, and negligence.

Deere answers in denial and raises several affirmative defenses. Deere claims that Ms. Davidson's products liability claim must fail for the following reasons: the danger was open and obvious; Mr. Davidson misused the product; Mr. Davidson made material alterations and modifications to the product; Deere used the state-of-the-art in design, manufacture, inspection and warnings; and Mr. Davidson incurred the risk. Deere claims that the implied warranty claim is duplicative of the strict liability claim, and thus must fail. Deere contends that the express warranty claim must fail for want of privity of contract. Deere contends that the negligence claim must fail for two reason: (1) Mr. Davidson's negligence was a greater cause of the accident than any negligence of Deere's, and (2) Deere's negligence (if any) was not the proximate cause of the accident.

### III. Summary Judgment Standard

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is to be entered as to all or part of a complaint when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, establish that (1) no genuine issue as to any material fact exists, and (2) the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsu-*

---

**2.** Ms. Davidson asserts that she will produce an expert witness at trial who will testify that the skid-loader was defective in design as it did not carry the state of the art safety equipment. As Ms. Davidson has failed to document the sub-

stance of that testimony in response to Deere's motion for summary judgment, the court cannot consider such expert testimony on summary judgment.

*shita Electronic Industries Co., Inc. v. Zenith Radio Corp.,* — U.S. —, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bartman v. Allis-Chalmers Co.,* 799 F.2d 311 (7th Cir., 1986). In determining whether any issue of material fact is in genuine dispute, the court must view all reasonable inferences from the record before it in the light most favorable to the non-moving party. *Matsushita Electronic Industries Co.,* 106 S.Ct. at 1357–58; *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d (1962); *Bartman v. Allis Chalmers Co.,* at 312; *Rodeo v. Gillman,* 787 F.2d 1175 (7th Cir.1986). While the non-moving party need not try its case by documents at the summary judgment stage, it must, if the moving party carries its initial burden, bring forth sufficient evidence beyond the pleadings (based on facts as would be admissible at trial) to demonstrate to the court that a genuine issue of fact as to a material element exists to warrant further fact finding. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 106 S.Ct. at 2553.

The standard for granting summary judgment mirrors the standard for granting a directed verdict under Fed.R.Civ.P. 50(a), with the distinction being that the latter judgment is based on the evidence heard at trial and the former on documentation. *Anderson v. Liberty Lobby, Inc.,* 106 S.Ct. at 2511; *Celotex Corp. v. Catrett,* 106 S.Ct. at 2553. The district court's function in reviewing a motion for summary judgment is not to weigh evidence to determine the truth of the matter, but only to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 106 S.Ct. at 2511. A district court should not enter summary judgment unless there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed. *Id.*

### IV.  Applicable Law

■ Federal courts sitting in diversity must apply the substantive law of the state in which the court sits as if it were a state court. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). As a corollary of the *Erie* doctrine, a federal court applies the conflict of law rules of the state in which it sits. *Day and Zimmermann v. Challoner,* 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975); *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Indiana courts follow the conflict of law doctrine of *lex loci delecti* in tort actions. *Snow v. Bayne,* 449 N.E.2d 296 (Ind.App.1983); *Vera Cruz v. Chesapeake & Ohio R.R. Co.,* 192 F.Supp. 958 (N.D.Ind. 1961). The injury giving rise to this action occurred in South Bend, Indiana; a state court in Indiana applying the doctrine of *lex loci delecti* would apply Indiana law. Thus, Indiana's substantive law governs this action.

### V.  Merits of Deere's Motion for Summary Judgment

Ms. Davidson's complaint alleges three categories of claims: products liability, warranty, and negligence. This court will address each category of claim individually.

#### A.  Products Liability

■ In her products liability claim, Ms. Davidson contends that the Deere skid-loader was defective in four respects: (1) Deere provided no instruction on how to lower the machine into an excavation; (2) the skid-loader's lift-arm locks would operate only when the lift-arms and bucket were fully raised; (3) Deere provided no warning that the bucket could descend even when the engine was off; and (4) the skid-loader's controls did not lock when the engine was shut-off.

Deere responds with a series of arguments and defenses upon which it grounds its summary judgment motion. Deere maintains that the failure to instruct on lowering the skid-loader into an excavation was not the proximate cause of Mr. Davidson's death. Deere concedes that the result might differ had the skid-loader fallen from the crane as it was being moved, but disputes that the failure to warn can be

deemed the proximate cause of Mr. Davidson's injuries suffered as he attempted to repair damage to the machine in the face of clear warnings against the method and position he used. Deere further argues that its failure to provide lift-arm stops at any position below full height cannot be deemed the proximate cause of Mr. Davidson's death because nothing in the record before the court indicates that the lift-arms on the skid-loader in question could not be fully raised and then locked.

Deere vehemently disputes the proposition that its warnings were inadequate as to the danger posed by the lift-arms and bucket when the engine is shut off. Deere notes that the instruction manual (which, according to the deposition testimony before the court, Mr. Davidson kept in his truck) and a decal located on the front of the skid-loader in such a position that Mr. Davidson had to have seen it as he worked on the metal plate, both warned not to stand under the lift-arms and bucket unless the lift-arm locks were engaged. Deere further notes that these warnings directed that no servicing of the skid-loader should be attempted without engaging the lift-arm locks, and also directed that the engine should be turned off whenever the skid-loader was serviced. Deere deems inescapable the conclusion that these warnings adequately informed all who read them that the danger posed by raised but unlocked lift-arms remained even after the skid-loader's engine was shut off.

Deere does not concede that the failure to lock the controls when the engine is shut off constituted a "defect", but argues that any such defect, like the other defects alleged by the plaintiff, was "open and obvious". Deere maintains that it is not a reasonable inference that an experienced construction worker who has read the instruction manual would be unaware of the risk of the lift-arms and bucket falling absent the use of the lift-arm locks, even when the engine is shut off.

Deere also asserts three statutory defenses set forth in Indiana's products liability act: misuse, incurred risk, and modifica-tion. This equipment, Deere maintains, was never meant to be serviced without locking the lift-arms; in attempting such servicing, Mr. Davidson misused the product. Deere concedes that the defense of incurred risk requires a subjective analysis of what Mr. Davidson knew, but contends that, in light of the warnings, no one could have been unaware of the risk, and, accordingly, Mr. Davidson must have known of the risk. Finally, Deere maintains that Mr. Davidson's removal of the metal plate constituted a modification such as to give rise to a defense to a products liability action. Mr. Davidson was killed by virtue by his inadvertent activating of the foot petal from the outside; the metal plate that he removed was intended to prevent access to the foot controls from the outside. Accordingly, Deere concludes, the removal of the metal plate constituted a modification of its product, causing the injury.

In support of its theories, Deere presents the court with a theory of what happened in the excavation. Deere maintains that the damage to the metal plate did not interfere with the bucket's up-and-down movement. Deere relies upon the affidavit of Bryan Clark, who asserted that if sufficient foot pressure could be put upon the foot control to cause the lift-arms to raise the bucket up five feet, as plainly occurred in the excavation, continuing the same foot pressure would allow the lift-arms to proceed to the top, where they could be locked. Deere maintains that in the face of this affidavit, the Indiana OSHA report's assumption that Mr. Davidson must have been attempting to remove the plate because of difficulty in operating the bucket cannot support a reasonable inference that the bucket could not be fully raised. Deere suggests that while the damage to the metal plate did not effect the raising or lowering of the bucket, it would have impaired the ability to grade with the bucket. It is for this reason, Deere suggests, that Mr. Davidson felt it necessary to detach the metal plate. Deere further proposes that in light of Mr. Davidson's extensive use of and familiarity with the JD–125 and its operating manual, Mr. Davidson must have

known that the bucket could be lowered through the foot controls even with the engine off, and that he fully appreciated the risks associated with working below the bucket without engaging the lift-arm locks.

The court, however, does not find Deere's scenario conclusive. In the present action, there are generally undisputed facts from which many inferences can be drawn. Some of the inferences are favorable to Deere, and some to Ms. Davidson. As this court must view all inferences in the light most favorable to the non-moving party (here, Ms. Davidson), the court cannot draw the inferences Deere argues. That Mr. Davidson misunderstood the warning and believed that the bucket would not move when the engine was off, and accordingly believed the locks to be unnecessary, is an inference as reasonable as the inferences argued by Deere. That the bucket could have been fully elevated to where the locks could be engaged is not conclusively shown by the affidavit of Mr. Clark, who, as Ms. Davidson correctly points out, has an interest in this litigation as one of Deere's design engineers.

The Supreme Court's recent decision in *Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), has caused the court concern over the sufficiency of Ms. Davidson's opposition to Deere's motion. In *Celotex Corp.*, the Court held that, when the nonmoving party would carry the burden of proof on a disputed element at trial, the non-moving party must make an affirmative showing of the disputed element on a summary judgment contest. The non-moving party need not supply new documentation, however. The non-moving party's showing can be made on the basis of documents that are already part of the record. *Id.* at 2558.

When no eye-witnesses exist and neither side can demonstrate what actually occurred by anything other than circumstantial evidence, Indiana law does not warrant a directed verdict simply because the plaintiff could not prove an element of her case with direct evidence. In the present action,

Ms. Davidson has submitted, by way of reasonable inferences from the documents upon which Deere relies, that sufficient evidence from which a jury could return a verdict in its favor. The burden of proof as to the defenses lies with Deere. There is authority in Indiana law for the type of showing Ms. Davidson attempts to make. In *Hoffman v. E.W. Bliss Co.*, 448 N.E.2d 277, 285 (Ind.1983), the plaintiff had no direct evidence that his injury was caused by a "double trip" or an uninitiated spontaneous cycle of a metal punch press, but his circumstantial evidence was sufficient to create a triable issue despite the defendant's evidence tending to show that the plaintiff must have triggered the press' action. A plaintiff who produced evidence to support an inference that a baseball pitching machine had been activated by a slight vibration saw his verdict upheld in *Dudley Sports Co. v. Schmitt*, 151 Ind. App. 217, 279 N.E.2d 266 (1972). See also *Corbin v. Coleco Industries, Inc.*, 748 F.2d 411 (7th Cir.1984) (plaintiff's knowledge of danger held to be genuine issue, precluding summary judgment for defendant on failure to warn claim, applying Indiana law).

The Supreme Court's holding in *Celotex*, by shifting the focus from the movant's showing to the non-movant's showing of evidence sufficient to preclude a directed verdict, has rendered this issue much closer than it otherwise would have been. Nonetheless, Ms. Davidson has submitted, by way of reasonable inferences from the materials before the court, evidence from which a jury could return a verdict in its favor. The burden of proof as to the defenses lies with Deere. On this basis, Deere's motion for summary judgment as to the products liability claim will be denied.

### B. Warranty Claims (Counts II and III)

■ Ms. Davidson agrees that Count II should be stricken from the complaint in light of a recent decision of the Indiana Court of Appeals that holds that a claim of breach of a implied warranty under the

uniform code duplicates a strict liability/products liability claim. *Thiele v. Faygo Beverage Co.*, 489 N.E.2d 562 (Ind.App. 1986). *Thiele*, read together with *Corbin v. Coleco Industries, Inc.*, 748 F.2d at 415–16, leads this court to conclude that Counts I and II of the complaint are duplicitous. This court will dismiss Count II on this basis.

 Deere moves for summary judgment as to Count III (express warranty pursuant to IND.CODE 26–1–2–313) on the basis that this cause of action sounds in contract, and that there is no privity between Mr. Davidson and his employer, Arco Construction Co., the purchaser of the skid-loader. Ms. Davidson responds by arguing that there is privity of contract between a buyer and his employees.

Ms. Davidson's argument finds no support in Indiana law. IND.CODE 26–1–2–318 provides:

> A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

This section would not include Mr. Davidson as a third party beneficiary of any express warranty from Deere to Arco Construction Co. Privity has not been abrogated as a requirement in contract actions for breach of warranty. *Lane v. Barringer*, 407 N.E.2d 1173 (Ind.App.1980). The Indiana legislature chose among the alternative forms of the Uniform Commercial Code in this matter, and any change in that rule is for the state's legislators to make. *See, Corbin v. Coleco Industries, Inc.*, 748 F.2d at 413–415; *Hixon v. Sherman-Williams Co.*, 671 F.2d 1005 (7th Cir.1982).

On this basis, Deere's motion for summary judgment as to Counts II and III will be granted.

### C. Negligence (Count IV)

 Deere contends that the negligence count should be dismissed for two reasons: (1) the fault attributable to Mr. Davidson exceeds any fault attributable to Deere; and (2) Mr. Davidson's negligence is so substantial that any fault on the part of Deere could not have been the proximate cause of the accident.

The same considerations control this argument as were applicable to the products liability claim. This court is unwilling to find on the record before it that no genuine dispute as to a material fact exists. On this basis, Deere's motion for summary judgment will be denied as it pertains to Count IV of the complaint.

### VI. Conclusion and Order

The court, therefore, ORDERS that the defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART. COUNTS II and III of the complaint are now ORDERED DISMISSED. SO ORDERED.