Burl SPANGLER and Bonnie
Spangler, Plaintiffs,

v.

SEARS, ROEBUCK AND CO. and
Roper Corporation, Defendants.

No. IP 87–1013–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Dec. 11, 1990.

Morris L. Klapper, Klapper & Isaac, Indianapolis, Ind., for plaintiffs.

William M. Osborn, Osborn, Hiner & Lisher, Indianapolis, Ind., for defendants.

TINDER, District Judge.

After a riding lawn mower accident in which Mr. Burl Spangler allegedly suffered extensive injury to his right foot, Mr. Spangler and his wife Bonnie brought a six-count complaint against Sears, Roebuck and Co. and Roper Corporation (hereinafter collectively described as "Sears") the alleged manufacturer and seller of the riding mower. Mr. and Mrs. Spangler seek to recover under theories of products liability (Count I), products liability—loss of consortium (Count II), negligence (Count III), negligence—loss of consortium (Count IV), fraudulent concealment (Count V) and fraudulent concealment—loss of consortium (Count VI).

In response, defendants filed a motion, based on the open and obvious danger rule, to dismiss Counts I–IV for failure to state a claim upon which relief can be granted. In addition, defendants moved for a ruling that plaintiffs are not entitled to punitive damages or attorneys fees.

## I. MOTION TO DISMISS

### a. *Counts I and II*

■ Counts I and II of the complaint seek recovery for personal injuries on a strict liability-products liability theory of recovery. Defendants have moved to dismiss Counts I and II based on the open and obvious danger rule. After defendants filed their motion to dismiss on January 2, 1990, the Indiana Supreme Court decided two cases which are dispositive of defendants' claim. In *Koske v. Townsend Engineering Co.*, 551 N.E.2d 437, 442 (Ind. 1990), and in *Miller v. Todd*, 551 N.E.2d 1139, 1143 (Ind.1990), the Indiana Supreme Court held "that the Indiana open and obvious danger rule does not apply to strict liability claims under the Indiana Product Liability Act." Therefore, defendants' motion to dismiss Counts I and II of plaintiffs' complaint is DENIED.

### b. *Counts III and IV*

■ Defendants' motion to dismiss Counts III and IV of the complaint is also grounded solely upon the open and obvious

danger rule. In response to defendants' motion to dismiss Counts III and IV of the complaint, plaintiffs cite *Bridgewater v. Economy Engineering Co.*, 486 N.E.2d 484, 489 (Ind.1985), and assert "that the open and obvious rule ... has no application where negligence is alleged." Plaintiffs, however, have misread the *Bridgewater* case which observed only that the open and obvious danger rule should be limited to products liability cases and not extended to general negligence cases of the "slip and fall" variety. *Id.* at 489. Plaintiffs have alleged a negligence-products liability theory of recovery, thus the open and obvious rule is fully available as a defense to plaintiffs' negligence claim.

Indeed, the *Bridgewater* case stands for the proposition that a trial court may grant summary judgment in favor of a defendant in a negligence-products liability case based on a determination that the alleged defect was open and obvious. See *Bridgewater*, 486 N.E.2d at 488–89 (finding "no genuine issue as to any material fact" regarding "any of the theories" of the trial court judge including the trial court's ruling "as a separate and independent basis for its decision [granting summary judgment] that the defect ... was *open and obvious*") (emphasis original). The *Bridgewater* court's conclusion "that the doctrine of open and obvious danger could be used against a product liability claim based on common law negligence" was reaffirmed by the Indiana Supreme Court in *Miller v. Todd*, 551 N.E.2d at 1143 (affirming "trial court's entry of summary judgment on open and obvious grounds" because the uncrashworthiness of a motorcycle that did not have a crash bar to protect a back seat rider should have been apparent to the rider, particularly because the front seat did have a crash bar).

### 1. The evolution of plaintiffs' claim

■ The *Bridgewater* and *Miller* cases instruct this court that it must review whether the open and obvious danger rule should bar Mr. Spangler from presenting his case to the jury. In performing this task this court has been hampered by the sketchy, incomplete and conclusory allega-

tions of plaintiffs' complaint. When describing how Mr. Spangler suffered his injuries, plaintiffs' counsel alleges merely that "On May 8, 1987, Mr. Burl Spangler, while operating the above-described tractor, sustained severe and permanent injury to his right foot, which injuries were the direct and proximate result of the dangerously defective condition of the lawn tractor and/or negligence of the defendants." This conclusory allegation does not inform this court, nor did it inform defendants, how Mr. Spangler's foot was injured.

Both defendants and this court have been left to speculate whether the foot was caught and twisted on the top of the mower, whether it was struck by an object thrown by the mower, whether it was injured by an object run into while Mr. Spangler was operating the mower or whether it was run over by the lawn mower blades. Such sketchy pleading is inadequate to inform a defendant concerning the claim against which he or she must defend. Moreover, such sketchy pleading, taken alone, would make it impossible to rule on defendants' motion to dismiss based on the open and obvious danger rule.

Plaintiffs were previously given leave to amend their complaint, nevertheless, the lack of particularity of their allegations has persisted in their amended complaint.[1] Consideration could be given to dismissing plaintiffs' complaint for lack of specificity. A dismissal without prejudice at this date could subject plaintiff to the bar of the statute of limitations, as plaintiff alleges his injury occurred more than two years ago. *See Monsanto Co. v. Miller,* 455 N.E.2d 392, 394 (Ind.App.1983) (interpreting Ind.Code § 33–1–1.5–5 to mean that for products liability claims "suit must be brought *within both* ten years of delivery to the initial user *and* two years of the accrual date" of the injury) (emphasis added); *See also* C. WRIGHT, A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1215 at 145 (1990) ("the rules *do* contemplate a statement of circumstances, occurrences, and events in support of the claim being presented ... Rule 8(a)(2) *does* require that the pleader disclose adequate information concerning the basis of his claim for relief as distinguished from a bare averment that he wants relief and is entitled to it") (emphasis added).

Nevertheless, upon a review of the extensive file in this case this court has concluded that it would *not* be in the best interest of justice to dismiss this complaint. *See* Fed.R.Civ.P. 8(f) (requiring "[a]ll pleadings [to] be so construed as to do substantial justice"). Plaintiffs filed their original complaint on August 18, 1987. On December 7, 1987, defendants filed a motion to dismiss similar to the one now under consideration. Defendants' motion was met by plaintiffs' response filed on December 21, 1987. In their response to defendants' initial motion to dismiss the plaintiffs did adequately set forth the facts on which their claim is based.[2] In addition, on

---

1. It should be noted that this amendment was sought over two years after this suit was originally filed, two months after this court had issued rulings on other elaborate motions to dismiss and after the plaintiffs had frequently and urgently sought to have this case expedited on this court's trial calendar. In response to plaintiffs' pleas this court had given plaintiffs a March, 1990 trial setting. Plaintiffs' late amendment to their complaint destroyed the possibility of a March, 1990 trial. Nevertheless, a review of plaintiffs' amendment indicates that it did not materially elaborate on the particulars of the factual basis on which plaintiffs' claim rests.

2. Plaintiffs' December 21, 1987, Brief contained the following statement of facts:

On Friday, May 8, 1987, Mr. Spangler volunteered to mow the yard at the church he attended in Fairland, Indiana. Mr. Spangler used the 10 horsepower lawn tractor he had purchased from Sears for this purpose. This was the first time Mr. Spangler had ever mowed at the church. While mowing along a fence, Mr. Spangler encountered some thorns and briars in bushes growing through the fence, which struck him in the face, causing him to abruptly leave the mower. When he landed on the ground, his right foot slipped and went under the mower at the exit chute, and his foot and toes were mangled in the mower blade. If the safety shutoff device had been incorporated in the seat of the mower, the blades would have automatically shut off, and Mr. Spangler would not have been injured. Mr. Spangler's foot was severely and permanently damaged. He lost toes and bones from the foot and sustained an impair-

March 1, 1989, plaintiffs filed their contentions which added further detail to their claim.

Since at least December, 1987, defendants have been on notice concerning the factual basis on which plaintiffs are seeking a recovery. In nearly three years of litigation including extensive discovery, defendants have never claimed prejudice based on the insufficiency of the allegations of plaintiffs' complaint, therefore, this court cannot say that the objectives of notice pleading have been subverted by plaintiffs' sketchy pleading.[3]

2. Application of the open and obvious rule to plaintiffs' allegations of negligence

Much as plaintiffs overstate their case by arguing that the open and obvious rule is inapplicable in *all* negligence cases, defendants mischaracterize plaintiffs' case by contending that plaintiffs' negligence counts must be dismissed because "the moving blade of a power lawn mower, the product which plaintiffs allege to be defective, is an open and obvious danger as a matter of law." It may be that "the moving blade of a power lawn mower ... is an open and obvious danger," however, such a conclusion is largely irrelevant considering the facts alleged in plaintiffs' complaint which are far removed from the facts described in the cases on which defendants rely.

In every open and obvious danger case cited by defendants in support of their mo-

tion to dismiss the court applied the open and obvious danger rule to preclude a products liability recovery where either (1) the plaintiff *intended* to place himself in close proximity to the open and obvious danger or (2) the plaintiff alleged that the product was defective solely because of a *failure to warn* the plaintiff of the danger.[4] *See Posey v. Clark Equipment Co.,* 409 F.2d 560, 563–64 (7th Cir.1969) ("no *duty to warn* if the danger be obvious") *cert. denied,* 396 U.S. 940, 90 S.Ct. 374, 24 L.Ed.2d 242 (1969); *Ragsdale v. K–Mart Corp.,* 468 N.E.2d 524, 527 (Ind.App.1984) (holding that a lawn mower "blade poses an open and obvious danger ... to one *placing a hand into* the running mower, particularly after the user has lifted the chute guard from its protective location"); *Bryant–Poff, Inc. v. Hahn,* 454 N.E.2d 1223, 1224–25 (Ind.App.1983) (plaintiff's injury was caused by an open and obvious danger where plaintiff *"reached his hand between* the chain and sprocket ... [and the chain and sprocket was activated] resulting in the crushing" of the plaintiff's arm) *cert. denied,* 465 U.S. 1075, 104 S.Ct. 1433, 79 L.Ed.2d 756 (1984); *Bemis Co. v. Rubush,* 427 N.E.2d 1058, 1061 (Ind.1981)[5] ("Although the manufacturer who has actual or constructive knowledge of an unobservable defect or danger is subject to liability for *failure to warn* of the danger, he has no duty to warn of the danger if open and obvious to all"). *cert. denied,* 459 U.S. 825,

---

ment which will remain with him for the balance of his life.

**3.** While the point is unrelated to the defendants' motion to dismiss, this court feels compelled to comment on the practice of pursuing claims based on both strict liability under Indiana's products liability statute and negligence in the same case. Cases in which a recovery is sought under the alternative theories of strict products liability and negligence are marked by the necessity of confusing and inconsistent jury instructions regarding such matter as comparative fault and the open and obvious danger defense. The failure to elect one or the other of these theories can result in an unnecessarily lengthy trial, a confused and unconvinced jury and a disappointed plaintiff. Of course, the choice of which theory to pursue is left to the plaintiff, to the extent that such theories have a basis in law.

Plaintiffs are the masters of their own fate in this regard.

**4.** The case of *Persinger v. Marathon Petroleum Co.,* 699 F.Supp. 1353 (S.D.Ind.1988) relief upon by defendants involved a determination of the duty a landowner owed to an invitee. *Persinger* is not instructive with respect to the law which should be applied in a products liability case.

**5.** In the *Bridgewater* case the Indiana Supreme Court cautioned that: "In *Bemis,* we *did not* hold that the question of whether an alleged danger is open and obvious is a matter of law in *all* cases. *Bemis* involved a set of facts that was not in conflict and that left no general issue as to any material fact except for the question of whether the danger was open and obvious." *Bridgewater,* 486 N.E.2d at 488 (emphasis original).

103 S.Ct. 57, 74 L.Ed.2d 61 (1982).[6]

In contrast to these cases, Mr. Spangler does not allege that defendants had a duty to warn him that the lawn mower blade was dangerous,[7] nor do defendants contend that Mr. Spangler intended to place his foot near the moving blade. Thus, the facts of this case are quite dissimilar from the facts of those cases where the open and obvious danger rule has been applied to remove a negligence claim from the jury.[8]

■ Mr. Spangler's negligence claim centers on his contention that the defendants were negligent for not equipping the riding mower he purchased with a safety device that would deactivate the mower blades once the operator of the mower left his seat, for not equipping the mower with an adequate safety shield at the mower's exit chute, and for failing to warn him about the potential benefit of an automatic safety shut-off device. While the danger presented to human body parts by the rapidly twirling steel blades underneath his Sears mower should have been obvious to Mr. Spangler, this is not the danger he complains of. The danger Mr. Spangler bases his lawsuit on is the prospect that he could be injured by those blades merely by non-negligently operating his mower. Mr. Spangler argues that the Sears mower should have been constructed in such a way as to prevent him from coming into contract with its dangerous blades while he was undertaking the task the mower was designed to accomplish or that he should have been warned of the danger of inadvertently contacting the blades, and he asserts that the defendants' design defects and omissions, which allowed him to eventually be injured by the mower's blades, constituted negligence.

This court cannot say that the danger that a rider might be injured by moving mower blades if he falls off his riding mower is an open and obvious danger as a matter of law. It may have been reasonable for Mr. Spangler to have concluded that he would be protected by the safety shield installed on his riding mower should he lose his balance and fall off the mower. Mr. Spangler's reasonableness in assuming he would be so protected is a classic jury question. *See, e.g., Corbin v. Coleco Industries, Inc.,* 748 F.2d 411, 417–18 (7th Cir.1984) (applying Indiana law) ("Whether a danger is open and obvious depends not just on what people can see with their eyes but also on what they know and believe about what they see. In particular, if people generally believe that there is a danger associated with the use of a product, but that there is a safe way to use it, any danger there may be in using the product in the way generally believed to be safe is not open and obvious").

Furthermore, plaintiff has alleged that the safety shield on his Sears mower was ineffectively installed. On a motion to dismiss the well pleaded allegations of the complaint are taken as true and all inferences must be made in favor of the non-moving party. *See, e.g., Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (on a motion to dismiss the court "must accept [the non-moving party's] allegations as true [and] may dismiss a complaint only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations"). If the safety chute was negligently installed and Mr. Spangler (the purchaser of the mower) was proximately injured thereby, as he has alleged, Mr. Spangler would be entitled to recover

---

**6.** Defendants' citation to the *Posey, Bryant–Poff* and *Bemis* cases in its briefing was incomplete, failing to set forth the fact that certiorari was denied.

**7.** Mr. Spangler does allege that defendants were negligent for failing to warn him about the efficacy of a safety device which would have automatically shut off the riding mower when the operator left his seat.

**8.** The *Ragsdale* case, described by defendants as presenting "strikingly similar facts" to this case, is particularly inapposite. In *Ragsdale* the plaintiff completely disregarded the safety chute on the mower and intentionally reached her hand into the chute while the mower was running. The *Ragsdale* plaintiff's intentional acts, including a complete disregard for the mower's safety mechanisms, make that case a far different one from the facts described in Mr. Spangler's pleadings.

from Sears absent any valid affirmative defense. Therefore, Sears' liability for allegedly ineffectively installing the safety shield cannot be absolved on Sears' motion to dismiss unless it is unequivocally clear that the alleged defect was open and obvious as a matter of law.

Defendants have cited no case for the proposition that an ineffectively installed safety chute is an open and obvious danger as a matter of law. This omission is not surprising in view of the inherently fact bound nature of the alleged defect. In short, it should have been painfully obvious to defendants' counsel that plaintiffs' claim that the safety chute of the Sears' mower was not properly installed presented a factual dispute not suitable for disposition on a motion to dismiss. Nevertheless, defendants interposed their broad motion to dismiss and made no attempt to specifically address plaintiffs' claim that the safety chute was ineffectively installed.

■ Finally, this court cannot conclude that the extent of the risk Mr. Spangler was subjecting himself to by operating a mower without a safety shut-off switch was open and obvious. Even if the potential for *some* injury was open and obvious it is rarely the case that the user of a product will be apprised of all the various ways in which the likelihood of injury or the extent of a potential injury may be reduced.[9] At one time in Indiana a plaintiff's pre-accident knowledge of the full extent of an open and obvious risk he took (including the potential precautionary measures that may have reduced the extent of his injuries) may have been irrelevant, however, the Indiana Supreme Court recently recognized the "crashworthiness doctrine"

which permits a manufacturer to be held liable for injuries that were increased because of the manufacturer's negligent failure to implement safeguards that would have reduced the extent of a plaintiff's injury. *See Miller v. Todd,* 551 N.E.2d at 1142–43. ("A claimant should be able to demonstrate that a feasible, safer, more practicable product design would have afforded better protection").

■ The crashworthiness doctrine represents the Indiana Supreme Court's determination that a manufacturer's failure to produce a crashworthy product presents a distinct danger to consumers, separate from any danger inherent in the normal use of the product, and that consumers injured by that danger suffer a compensable harm. The open and obvious danger rule may prevent a plaintiff's recovery only when the precise danger the plaintiff contends was negligently placed in his path was open and obvious. Accordingly, for a court to properly apply the open and obvious danger rule in a case where a lack of crashworthiness is alleged, the court must inquire into the openness and obviousness of the manufacturer's failure to incorporate sufficient safety features into its product to make the product crashworthy.

■ In crashworthiness cases, for a defendant to be entitled to summary judgment or dismissal of a negligence claim based on the open and obvious danger rule the court must be convinced that the full extent of the increased danger presented by the nonexistence of or failure of the particular safety device the plaintiff claims should have been implemented was open and obvious. The practical effect of this requirement for trial courts is to virtually

9. Plaintiffs have moved for a determination of law in advance of trial, asking this court to rule that, "the open and obvious danger rule has no application and is not a defense in respect to plaintiffs' allegation of strict liability under the Indiana Products Liability Act." Plaintiffs' desire to have issues disposed of before trial is noble but not capable of fulfillment here.

In one of it recent decisions disposing of the open and obvious danger rule as a defense in strict liability claims under the Indiana Act the Indiana Supreme Court observed that "the relative obviousness of a defect is certainly perti-

nent to determining whether or not a product is defective and whether or not a defect is unreasonably dangerous." *Miller v. Todd,* 551 N.E.2d at 1143. Thus, the obviousness of a defect continues to have some relevance in product liability cases under the Indiana Act.

The role the obviousness of any defect in the Sears mower has in this case is a fact sensitive question more appropriately addressed at the time jury instructions are considered. Accordingly, plaintiffs' motion for a pre-trial determination of law is DENIED.

eliminate the open obvious danger rule as a tool for the pretrial disposal of negligence cases where lack of crashworthiness is alleged. Only in fact situations in which the plaintiff admits pre-accident awareness of the type of precautionary measure that he alleges should have been implemented to reduce his injuries or where the potential precautionary measure is so obvious that a reasonable person should have known that it could have been implemented will the open and obvious rule permit a court to grant a defendant's summary judgment motion or motion to dismiss where the crashworthiness of a product is at issue.[10]

As defendants do not claim Mr. Spangler had pre-accident knowledge of the feasibility and potential availability of an automatic shut-off switch for riding mowers or any other practicable safety device that would have limited his injuries, defendants' motion to dismiss Counts III and IV must be DENIED.[11]

## II. PUNITIVE DAMAGES

■ Defendants oppose Mr. Spangler's request for punitive damages and seek to have all references to punitive damages stricken from the complaint. Mr. Spangler has alleged that defendants knew about certain standards promulgated by the American National Standards Institute, Inc. before Sears delivered the riding mower to Mr. Spangler. These standards allegedly required riding mowers to have "[a] means ... that will automatically stop the blades ... when the operator leaves the normal operator position." Mr. Spangler contends that Sears' act of placing a lawn mower in the stream of commerce without such an automatic shut-off or without a warning regarding the potential consequences of not having such a shut-off was "willful and wanton [conduct] in violation of public policy" and was undertaken "reckless[ly] or in heedless disregard of the consequences." Based on these allegations, Mr. Spangler has requested punitive damages.

In response defendants quote *Miller Pipeline Corp. v. Broecker,* 464 N.E.2d 12, 12 (Ind.App.1984) to the effect that "[a] heedless disregard of the consequences, absent an oppressive or malicious state of mind, [is] insufficient to justify ... an award [of punitive damages]." In both their initial brief filed with this court on January 2, 1990, and in their reply brief filed on January 16, 1990, defendants have argued quite strenuously that *Miller Pipeline* reflects the law in Indiana.

Defendants' counsel purports to have conducted a review of the Indiana case law on the subject of punitive damages and

---

**10.** Apparently, *Miller v. Todd* was a case where the plaintiff possessed such pre-crash knowledge. In *Miller v. Todd* the safety feature plaintiff alleged would have reduced her injuries was a crash bar. The crash bar feature had been installed on the front of the motorcycle on which the plaintiff was injured but not on the back seat where the plaintiff rode when she was injured.

The Indiana Supreme Court upheld the trial court's grant of defendant's summary judgment motion based on the open and obvious danger rule because the plaintiff "chose to ride the back seat of a motorcycle the front seat of which was equipped with the very crash bars she now alleges should have been on the back seat as well." *Miller v. Todd,* 551 N.E.2d at 1143. The court concluded that "[t]his difference in the protection against danger was sufficiently apparent to justify the trial court's entry of summary judgment on open and obvious grounds." *Id.*

**11.** After reviewing defendants' motion to dismiss based on the open and obvious danger rule, this court is left with the unsettling impression that defendants' motion was made with little regard for the factual intricacies presented by this case. For instance, defendants' broadly seek dismissal of all negligence and strict liability counts of the complaint based on the open and obvious danger rule but make no effort to address plaintiffs' individual allegations of breach of a duty, such as the allegation that the mower's safety shield was ineffectively installed. The breadth of defendants' motion coupled with defendants' appalling lack of attention to the factual detail of this case leave the distinct impression that this motion to dismiss was interposed for purposes of delay with little hope of success on the merits. This impression was only reinforced by defendants' failure to withdraw their motion to dismiss Counts I and II based on the open and obvious danger rule following notice that the Indiana Supreme Court had unequivocally held that the open and obvious danger rule was inapplicable as an affirmative defense in Products Liability Act cases.

states that "as to whether conduct which is reckless or in heedless disregard of the consequences gives rise to punitive damages, the holdings of Districts of the Indiana Court of Appeals are divided and *there is no Indiana Supreme Court holding which defendants can find*" (emphasis added). The defendants do acknowledge that Indiana's Fourth District Court of Appeals in *Orkin Exterminating Co. v. Traina*, 461 N.E.2d 693, 698 (Ind.App. 1984), *vacated by* 486 N.E.2d 1019 (Ind. 1986), "seemed to hold that reckless or heedless disregard in and of itself was enough for punitive damages," however, after reviewing several other decisions defendants conclude that *"Miller Pipeline* and not *Orkin* is the correct rule of Indiana law." Defendants' "studied" conclusion, however, is emphatically wrong.

Far from finding "no Indiana Supreme Court holding[s]" on point, defendants should have found three recent Indiana Supreme Court cases instructive. *See Bud Wolf Chevrolet, Inc. v. Robertson*, 519 N.E.2d 135 (Ind.1988); *Orkin Exterminating Co. v. Traina*, 486 N.E.2d 1019 (Ind. 1986); *Travelers Indem. Co. v. Armstrong*, 442 N.E.2d 349 (Ind.1982).

Incredibly, the *Orkin* case decided by the Indiana Supreme Court was a direct appeal of the appellate court case that defendants have argued incorrectly stated the law. Not only does the *Orkin* Supreme Court case clearly refute defendants' position on the punitive damages issue, but it also cites the *Miller Pipeline* case relied upon by defendants. If defendants' counsel had merely undertaken the elementary step of using *Shepard's Citations* to review the citations to the *Orkin* or *Miller Pipeline* appellate court cases discussed in his briefing, he would have found a decision of the Indiana Supreme Court which mentioned both.

In *Orkin* the Indiana Supreme Court observed that "punitive damages may be awarded upon a showing of willful and wanton misconduct." *Orkin*, 486 N.E.2d at 1023. The defendants have continually argued that "malice 'or an equivalent state of mind' must be proved" in order to recover punitive damages. The *Orkin* court, however, said that "we have no problem with [a] conception of willfulness and wantonness as *not embodying malice*, ill will or intent to injure." *Id.* at 1023. The Indiana Supreme Court returned to this point in the *Bud Wolf* case observing that, "while proof of malice may be relevant to show the obduracy necessary for punitive damages, the element of *malice is* a mere alternative, *not an essential prerequisite, to obtain damages." Bud Wolf*, 519 N.E.2d at 137.

In their reply brief defendants responded to plaintiffs' citation of the *Bud Wolf* case, not by conceding the point, but by unabashedly arguing that the *Bud Wolf* case, in fact, supports their position that "malice 'or an equivalent state of mind must be proved." Such, however, is not the law in Indiana as both the *Bud Wolf* and *Orkin* cases make clear. Indeed, the *Orkin* court observed that states of mind similar to malice such as "ill will or intent to injure" need not be proved to establish willful and wanton conduct. *Orkin*, 486 N.E.2d at 1023. Far from supporting defendants' position, the *Bud Wolf* court put the malice issue at rest when it said: "[w]e find [a] malice requirement to be inconsistent with a correct application of *Orkin Exterminating Co., Inc. v. Traina* (1986), Ind., 486 N.E.2d 1019 and *Travelers Indemnity Co. v. Armstrong* (1982), Ind. 442 N.E.2d 349." *Bud Wolf*, 519 N.E.2d at 136.[12]

---

12. Defendants' reply brief notes that the case of *Martin Chevrolet Sales, Inc. v. Dover*, 501 N.E.2d 1122 (Ind.App.1986), first cited in plaintiffs' response brief, "by the way supports defendants' position that malice is required." Defendants go on in their reply to quote the *Martin Chevrolet* case, ending the quote from the *Martin Chevrolet* opinion (perhaps unwittingly?) one space before the *Martin Chevrolet* court cited the Indiana Supreme Court's *Orkin* decision.

While at first glance the *Martin Chevrolet* case may appear to support the defendants' position that malice is required before punitive damages may be awarded, a closer reading would reveal that the *Martin Chevrolet* court recognized the Indiana Supreme Court's conclusion in *Travelers* that "fraud, gross negligence or oppressive conduct ... [entirely] inconsistent with conduct that was the result of mere negligence, a mistake of law or fact, overzealousness or other

Plaintiffs' citation of the *Bud Wolf* case also did not sway defendants from the second clearly erroneous legal position found in their briefing on the punitive damages issue, that is, that a finding that Sears "heedlessly disregarded the consequences" of its conduct could not justify an award of punitive damages. Even a cursory reading of *Bud Wolf* should have shown defendants the error of their position. The *Bud Wolf* court carefully discussed the Supreme Court's *Orkin* holding that was ignored by defendants. In *Bud Wolf* the court observed that, "[e]xpressly conceding that punitive damages may be awarded upon a showing of willful and wanton misconduct, even absent malice, ill will or intent to injure, this Court [in the *Orkin* case] declared that to affirm an award of punitive damages, the reviewing court must find that under the circumstances known, the defendant subjected other persons to probable injury, *with an awareness of such impending danger and with heedless indifference of the consequences.*" *Bud Wolf,* 519 N.E.2d at 136 (emphasis added; interior quotation omitted).

Plaintiffs have clearly alleged the type of culpable and heedless conduct which the *Orkin* court observed would support an award of punitive damages. Whether the defendants' conduct was precisely described as "reckless or in heedless disregard of the consequences" or whether

other similar terminology was used is of little relevance as the *Orkin* court made clear.

Indeed, the *Orkin* court approved a number of semantic formulations, all of which sufficiently describe "the perverseness that public policy will permit the courts to punish" by an award of punitive damages. *Orkin,* 486 N.E.2d at 1023. Some of the formulations a plaintiff may employ to describe conduct for which punitive damages may be sought include descriptions of: "(1) conscious and intentional misconduct which, under the existing conditions, the actor knows will probably result in injury.... (2) a 'conscious indifference,' ... (3) 'heedless indifference' and 'reckless disregard for the safety of others,' ... [and] (4) 'reprehensible conduct' and 'heedless disregard of the consequences.'" *Id.* (citations omitted) (numbers not in original quote). The *Bud Wolf* case adds that conduct giving rise to a punitive damage award need "not [be] proven to be malicious" but could consist of "fraud, gross negligence or oppressiveness" so long as the proof (by clear and convincing evidence) reflected that the "conduct was inconsistent with any contention of mistake of law or fact, honest error of judgment, overzealousness, mere negligence, or other such noniniquitous human failing." *Bud Wolf,* 519 N.E.2d at 137; *accord Travelers,* 442 N.E.2d at 362.

---

noniniquitous human failings" can support an award of punitive damages. *Martin Chevrolet,* 501 N.E.2d at 1127.

The *Martin Chevrolet* court was unwilling to conclude that "misfiling a single sheet of paper was conduct consistent with" the standard for awarding punitive damages set forth in the *Travelers* case. Unfortunately, in what may have been an attempt to shorten the *Travelers* test for punitive damages, The *Martin Chevrolet* court commented that in order to award punitive damages there "must be some evidence of malice." *Id.* at 1127. One federal district court applied *Martin Chevrolet* and concluded that malice is required under Indiana law, in order to award punitive damages, *see Olsson v. A.O. Smith Harvestore Products, Inc.,* 656 F.Supp. 644, 646–47 (S.D.Ind.1987); however, that opinion came before the Indiana Supreme Court's decision in *Bud Wolf* which considered the *Martin Chevrolet* case and two paragraphs later held that "this view of malice as a prerequisite to punitive damages ... is inconsistent with a cor-

rect application of *Orkin Exterminating Co., Inc. v. Traina* (1986), Ind., 486 N.E.2d 1019 and *Travelers Indemnity Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349." *Bud Wolf,* 519 N.E.2d at 136. Clearly, under Indiana law there need be no specific intent to justify punitive damages, in some circumstances clear and convincing evidence of heedlessness or recklessness will do.

While the *Martin Chevrolet* court's error regarding the necessity of finding "malice" is unfortunate, it is apparent that it could not have misled defendant's counsel. Defendants' counsel mentioned the *Martin Chevrolet* case only after it was drawn to his attention by plaintiffs' counsel. Moreover, the *Martin Chevrolet* case like the *Bud Wolf* case cites the Indiana Supreme Court's *Orkin* opinion wherein defendants' counsel could have found an accurate statement of the controlling law. Furthermore, by using *Shepard's Citations* counsel would have been led to the *Bud Wolf* case which flatly contradicted *Martin Chevrolet.*

It is apparent that plaintiffs' allegations of Sears' wrongful conduct fall within the broad parameters set forth in the *Bud Wolf* and *Orkin* cases and permit plaintiffs to seek punitive damages in their complaint. That is not to say that the punitive damages request plaintiffs have made in this case will go to the jury. "The issues produced by the punitive damages concept are inherently issues of degree, i.e. was the conduct slightly negligent, negligent, very negligent, grossly negligent, wanton or heedless? Was the conduct malicious or merely inconsiderate or impolite?" *Travelers*, 442 N.E.2d at 360. This court would add that because punitive damages issues are typically matters of "degree" they are uniquely unsuited for disposition by pretrial motion.[13] Defendants' motion to strike plaintiffs' claim for punitive damages from the complaint is DENIED.

The mere denial of defendants' motion to strike plaintiffs' claim for punitive damages, however, is insufficient in light of the egregious conduct of defendants' counsel in briefing this issue. Not only is it quite clear that defendants did not have a meritorious argument that all references to punitive damages should be stricken, but defendants' counsel's briefing was clearly inadequate regarding the controlling precedents on this issue.

This court intends to express no opinion concerning whether defense counsel's performance was intentionally deceptive or grossly negligent and in heedless disregard of the appropriate conduct of a member of the bar; however, this was not a case where the applicable law was difficult to uncover. By merely researching the citations to his own cases defendants' counsel would have located the controlling Indiana Supreme Court cases, all of which were decided more than two years before defendants' motion to dismiss was filed.

Rule 3.3 of the Rules of Professional Conduct as adopted in Indiana requires a lawyer "to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." Rule of Prof. Cond. 3.3(a)(3). This duty continues to the conclusion of the case. Rule of Prof.Cond. 3.3(b). Defendants' counsel's failure to locate controlling authority and bring it to the attention of this court and his intransigence in adhering to his incorrect legal opinion in the face of contrary controlling authority could lead this court to conclude that defendants' counsel was less than diligent in the effort he made to adhere to the Rules of Professional Conduct.

Defendants' counsel's representations regarding "the correct rule of Indiana law" were clearly erroneous and have remained unchanged throughout the briefing in this case despite plaintiffs' citation of contrary controlling authority. Furthermore, defendants' citation of the *Bud Wolf* case in defendants' reply brief indicates that counsel read a decision of the Indiana Supreme Court which flatly contradicted counsel's representations to this court concerning the state of Indiana law. Counsel had ample opportunity to correct any research deficiencies that may have manifested themselves in defendants' initial brief; indeed, he was led to the correct rule of law by plaintiffs' counsel. Instead, however, counsel looked the other way and made statements that, depending on counsel's actual knowledge, bordered on misrepresentation.

The gross negligence or willful misrepresentations of defendants' counsel were not harmless. This court is concerned about

---

**13.** Defendants' citation of *Bishop v. Firestone Tire & Rubber Co.*, 814 F.2d 437, 447 (7th Cir. 1987), does not add to their argument that references to punitive damages should be stricken from plaintiffs' complaint. Defendants argue that in *Bishop* the evidence that the defendant had taken steps to warn the public regarding the danger of its product precluded an award of punitive damages. The defendants, however, submitted no affidavits or other evidence in support of their assertion that Sears took steps, through statements printed in the owners manual accompanying its riding mowers, to warn Mr. Spangler and other customers of the dangerous aspects of Sears mowers. A vague reference in the text of a brief regarding something the defendants may or may not have done cannot serve as the grounds for a successful motion to dismiss or to strike the allegations of a complaint.

whether defendants' counsel has thwarted plaintiffs' entitlement to have their claims heard in a timely fashion[14], wasted the time of this court and imposed needless effort and expense upon plaintiffs and plaintiffs' counsel.[15] Moreover, this court questions whether the conduct of defendants' counsel was below that reasonably to be expected of members of the bar and whether defendants' motion to strike the request for punitive damages from plaintiffs' complaint was based upon a "belief formed after reasonable inquiry" as required by Federal Rule of Civil Procedure 11. Nevertheless, this court sees no benefit in reaching conclusions on these issues while the merits of the underlying litigation are still at issue.

Accordingly, this court reserves its decision as to whether sanctions under Rule 11 should be imposed against counsel for the defendants until this case has been concluded.[16] Counsel will have the opportunity to address this question, as well as the type and amount of sanctions, if any, before this court will set sanctions.

## III. ATTORNEYS FEES

Plaintiffs assert entitlement to attorneys fees pursuant to Ind.Code § 26–1–2–721, which provides that:

> Remedies for material misrepresentation or fraud include all remedies available under [this] IC 1971, 26–1–2 [26–1–2–101 —26–1–2–725] for nonfraudulent breach. In all suits based on fraud or material misrepresentation, if the plaintiff recovers judgment in any amount, he shall also be entitled to recover reasonable attorney fees which shall be entered by the court trying the suit as part of the judgment in that suit. Neither recission or a claim for recission of the contract

for sale nor rejection or return of the goods shall bar or be deemed inconsistent with a claim for damages or other remedy.

Ind.Code § 26–1–2–721. Defendants contend that this provision from Indiana's adaptation of the Uniform Commercial Code ("U.C.C.") is inapplicable to the facts alleged by plaintiffs and ask this court to strike plaintiffs' request for attorney fees from the complaint.

The issue presented is novel. This court has found no Indiana case addressing the applicability of Ind.Code § 26–1–2–721 to an action for fraudulent concealment arising out of the same facts on which a products liability claim is grounded. Moreover, Indiana is the only jurisdiction which has amended U.C.C. § 2–721 to add a provision authorizing an award of attorneys fees for fraud or misrepresentation. *See* U.C.C. § 2–721, 1B U.L.A. 570 (1989).

In attempting to predict how an Indiana court would resolve the question of Ind. Code § 26–1–2–721's applicability to the facts of this case this court has kept in mind the admonition of the Indiana Supreme Court "that with the 1978 Product Liability Act the [Indiana] legislature entered, occupied, and preempted the field of product strict liability in tort." *Koske v. Townsend Engineering Co.*, 551 N.E.2d 437, 442 (Ind.1990). This court is also mindful that Indiana courts consider claims based upon a "theory of breach of implied warranty in tort [to be] identical to the theory of strict liability in tort ... codified in the [Indiana] Product Liability Act" and have frequently dismissed, as duplicative, implied warranty in tort claims where liability based on the Indiana Product Liability Act (or simply strict liability in tort) has also been claimed based on the same set of

---

**14.** In fairness it should be noted that plaintiffs' counsel who amended his complaint on November 22, 1989, over two years after filing his original complaint, bears some of the responsibility for the delay experienced by plaintiffs.

**15.** In addition to defendants' counsel's misleading briefing on the punitive damages issues, the detriment to plaintiffs and this court has been exacerbated by counsel's other failures including his imprecise briefing of the open and obvi-

ous danger rule, *see supra* at p. 1443, and his failure to withdraw motions to dismiss that were rendered non-meritorious by recent Indiana Supreme Court precedents. *See supra* at p. 1444 n. 11.

**16.** Counsel for the plaintiffs has not sought sanctions, but a court is authorized to address the subject "upon its own initiative." Fed.R. Civ.P. 11.

facts. *Thiele v. Faygo Beverage, Inc.*, 489 N.E.2d 562, 584 (Ind.App.1986) (*see* cases cited in *Thiele*, 489 N.E.2d at 581)[17]; *see also Corbin v. Coleco Indus., Inc.*, 748 F.2d 411, 416 (7th Cir.1984) ("We are inclined to think, though we do not hold, that in the context of products liability actions 'breach of implied warranty sounding in tort,' when not based on the consequential damages provisions of UCC § 26–1–2–715(2)(b), is just another name for strict liability"); *Zepik v. Ceeco Pool & Supply, Inc.*, 637 F.Supp. 444, 450 (N.D. Ind.1986) ("Under Indiana law a count based on tortious breach of implied warranty is duplicitous (sic) of a count based on strict liability in tort and both counts may not be pursued in the same lawsuit;" *quoting Neofes v. Robertshaw Controls Co.*, 409 F.Supp. 1376, 1379 (S.D.Ind.1976)) *aff'd in part, vacated in part*, 856 F.2d 936 (7th Cir.1988) (remanded for consideration of jurisdictional claim); *Withers v. Sterling Drug, Inc.*, 319 F.Supp. 878, 882 (S.D.Ind. 1970) ("Tortious breach of implied warranty forms the theoretical basis for the strict liability rule adopted in Indiana and does not constitute a separate cause of action"); *Fruehauf Trailer Div. v. Thornton*, 174 Ind.App. 1, 366 N.E.2d 21, 28 (1977) (noting that "implied warranty in tort has been superseded by strict liability" but finding erroneous jury instruction containing both theories to be harmless error).

▮ Thus, insofar as defendants' fraudulent concealment count duplicates a strict liability in tort claim or an implied warranty in tort claim it would be superseded by the Indiana Products Liability

Act. A failure to warn is an aspect of some strict liability in tort claims *see, e.g., Jarrell v. Monsanto Co.*, 528 N.E.2d 1158 (Ind.App.1988) *trans. denied* 555 N.E.2d 453 (1990), moreover, an implied warranty claim is much like a fraud claim except that it does not require scienter, *see, e.g.,* PROSSER & KEETON, THE LAW OF TORTS § 105, 728–29 (5th ed. 1984).

Nevertheless, any duplication between plaintiffs' Product Liability Act claim and their fraudulent concealment claim is not so clear and coextensive that this court is willing to rule that the applicability of the attorney fees provision of Ind.Code § 26–1–2–721 has been superseded in this case by the Indiana Product Liability Act.

Products liability negligence cases are often premised on breach of a duty to warn, *see, e.g., Corbin*, 748 F.2d at 416–17 (discussing claim of negligent failure to warn of potentially dangerous aspect of swimming pool). Similarly, a cause of action for fraudulent concealment describes conduct "in which one having a duty to disclose certain facts to another knowingly fails to do so, and as a result, the other relies upon this nondisclosure to his detriment." *Brown v. Indiana Nat'l Bank*, 476 N.E.2d 888, 891 (Ind.App.1985) *trans. denied* (1985).

▮ The crux of plaintiffs' fraudulent concealment claim is that defendants had a duty to warn Mr. Spangler of certain safety devices that were available on the market at the time Mr. Spangler purchased his mower and that these safety devices were proven effective in reducing the likelihood of a consumer experiencing the type of

---

17. At least one court has held that the *Thiele* case stands for the proposition "that a claim of breach of an implied warranty under the uniform code duplicates a strict liability/products liability claim." *See Davidson v. John Deere & Co.*, 644 F.Supp. 707, 712–13 (N.D.Ind.1986); however, this conclusion is inaccurate. Indiana's 1978 Product Liability Act ("the Act") explicitly stated that it did "not apply to actions arising from or based upon any alleged breach of warranty." Ind.Code 33–1–1.5–1 (1982). The *Thiele* court expressly observed that this language from the Act (and later modifications of it) was meant to clarify that the Act was not meant to affect "warranty actions ... brought under the UCC." *Thiele*, 489 N.E.2d at 583.

The *Thiele* court held only that a count "based on breach of implied warranty in tort (as distinct and separate from breach of an implied warranty arising under the U.C.C. with its attendant limitations of—'the usual UCC contract defenses of notice, disclaimer, limitation of remedy, privity limitations, and the four-years-from-date-of-sale statute of limitations') ... duplicates and merges with [a count] based on strict liability in tort." *Id.* at 584 (interior quote is court's quotation in *Thiele*, 489 N.E.2d at 582 of Vargo & Lieberman, *Products Liability–1979 Survey of Recent Developments in Indiana Law*, 12 IND.L.REV. 227, 241 (1979) (omitting footnotes)).

injury suffered by Mr. Spangler. Thus, Mr. Spangler's fraudulent concealment claim is identical to his claim that defendants negligently failed to warn him of a danger associated with the use of their product. Both causes of action are based on the same set of facts and the same alleged breach of duty. There is no reason for plaintiffs to be permitted to pursue both causes of action in this litigation as the only apparent difference between the negligence claim based on a duty to warn and the fraudulent concealment claim is the potential to recover attorney fees under the fraudulent concealment claim. *See, e.g., Corbin,* 748 F.2d at 416 ("Unless there is some possibility that [the plaintiff] might recover [on one of two duplicative theories] but not on [the other], it is wasteful and confusing for him to prosecute both theories"); *Thiele,* 489 N.E.2d at 584 (upholding summary judgment on one of two duplicative counts where court could "conceive of no set of facts under which it would be possible for an injured plaintiff to recover [on one theory] but not on the [other] theory"). Therefore, this court ORDERS the plaintiffs to notify defendants and this court within thirty (30) days of receiving this entry whether they elect to try defendants' alleged breach of a duty to warn under a fraudulent concealment theory or under a theory of negligent breach of a duty to warn.

■ With respect to defendants' motion to strike plaintiffs' request for attorney fees from the complaint, this court can find no reason to deny plaintiff the right to seek attorneys fees pursuant to its fraudulent concealment claim. Defendants claim that Ind.Code § 26–1–2–721 is inapplicable in this case, yet they provide no authority or reasoning in support of their assertion.

The language of Ind.Code § 26–1–2–721 is extremely broad and does not expressly limit the right to recover attorney fees to actions in which a contract or U.C.C. warranty recovery is sought. Moreover, the Indiana Legislature fine-tuned the Products Liability Act in 1983 to expressly clarify that, except for the statute of limitations provision applicable to products liability claims in negligence and strict liability, the Act "governs" only "actions in which the theory of liability is strict liability in tort." Ind.Code § 33–1–1.5–1 (1990). Thus, any argument that Ind.Code § 26–1–2–721 is preempted by the Indiana Products Liability Act in a products liability case based on facts which would also permit a claim for negligent breach of a duty to warn has been seriously undermined.

■ Though this court is doubtful that the Legislature intended to give plaintiffs in every negligence-duty-to-warn-products-liability-case the right to recover punitive damages merely by styling their cause of action as a claim for fraudulent concealment, this court is not free to rewrite the plain wording of the statute which allows that result. Where the wording of a statute is clear and unambiguous it must be given the meaning apparent on its face. *See, e.g., United States v. Locke,* 471 U.S. 84, 95, 105 S.Ct. 1785, 1792, 85 L.Ed.2d 64 (1985) ("deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill, generally requires us to assume that 'the legislative purpose is expressed by the ordinary meaning of the words used'" (citation omitted); *Rubin v. United States,* 449 U.S. 424, 431, 101 S.Ct. 698, 702, 66 L.Ed.2d 633 (1981) ("When we find the terms of a statute unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances" (citations omitted; interior quotations omitted); *Jones v. Hanley Dawson Cadillac Co.,* 848 F.2d 803, 806–07 (7th Cir.1988) ("The language of a statute controls when that language is sufficiently clear"); *Estate of Cowser v. C.I.R.,* 736 F.2d 1168, 1171 (7th Cir.1984) ("when the plain language of a statute is clear, courts need look no further than those words in interpreting the statute").

The wording of Ind.Code § 26–1–1–721 permits the recovery of attorney fees "[i]n *all* suits based on fraud or misrepresentation" (emphasis added). No words of limitation were placed upon this legislative entitlement. Furthermore, this court does not believe that the result of allowing at-

torney fees to be recovered pursuant to Ind.Code § 26–1–2–721, on these facts, would be harsh, unfair or greatly at odds with the legislative purpose behind the statute. Plaintiffs still must prove fraudulent concealment before they are entitled to attorney fees. Accordingly, defendants' motion to strike plaintiffs' request for attorneys fees from the complaint is DENIED.

ALL OF WHICH IS ORDERED.